

**JAMIL ABDUL MUHAMMAD, Plaintiff, vs. JUDGE MARTIN E. SMITH; JASON WHITE, Assistant District Attorney; BROOME COUNTY COURTS, 6TH DISTRICT; AMERICAN BAR ASSOCIATION; UNITED STATES OF AMERICA; and STATE OF NEW YORK, Defendants.**

**3:13-cv-760 (MAD/DEP)**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF NEW YORK**

**2014 U.S. Dist. LEXIS 99990**

**July 23, 2014, Decided**
**July 23, 2014, Filed**

**PRIOR HISTORY:** Muhammad v. Judge, 2013 U.S. Dist. LEXIS 148510 (N.D.N.Y, Oct. 16, 2013)

**COUNSEL:** [*1] JAMIL ABDUL MUHAMMAD, Plaintiff, Pro se, Albion, New York.

**JUDGES:** Mae A. D'Agostino, United States District Judge.

**OPINION BY:** Mae A. D'Agostino

**OPINION**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Plaintiff, who is currently a New York State prisoner but was not at the time this action was filed, commenced this civil rights action asserting claims against a sitting judge, an assistant district attorney, a county court, and the American Bar Association. *See* Dkt. No. 1. In an October 16, 2013 Report, Recommendation, and Order, Magistrate Judge Peebles conducted an initial review of the complaint and recommended that the complaint be dismissed, with leave to replead only as to any claims asserted against Defendant American Bar Association. *See* Dkt. No. 19.

Currently before the Court is Magistrate Judge Peebles' Report, Recommendation, and Order and Plaintiff's objections thereto.

**II. BACKGROUND**

Plaintiff's complaint and his many subsequent filings are largely unintelligible. In his complaint, Plaintiff identifies himself as a "Moor/Sovereign/a Freeman On The Land/ a Man, Real Live Flesh and Blood[.]" Dkt. No. 1 at 3. Plaintiff claims that, through his "unalienated rights under UCC1-207(308)," he is "entitled to any Interpleted [*2] Funds relative to JAMIL ABDUL MUHAMMAD, and the defendant is determined to be Barred from any collection of my alleged debt from JAMIL ABDUL MUHAMMAD relating to Jamil Abdul Muhammad and defendant had in no 'CLAIM IN FACT.'" *Id.* at 5.

From other submissions submitted by Plaintiff, it appears that Plaintiff was sentenced by Broome County Court Judge Martin E. Smith, a named Defendant, based upon a plea of guilty entered in that court. *See* Dkt. No. 7 at 2. Plaintiff appears to allege that, as a result of those proceedings, Judge Smith is guilty of kidnapping, and is liable for conspiracy to violate his civil rights in violation of 18 U.S.C. § 241. *See id.* Further, Plaintiff makes vague references to a clerk in Binghamton named "Karen," and claims that she and other Defendants have placed him in imminent harm. *See* Dkt. No. 21 at 4-5. Plaintiff asks the Court to award him "the dismissal of said charges" and to release him "by implying said 'habeas corpus' granting [him] immediate release of confinement[.]" *Id.* at 5.

In a Report, Recommendation, and Order, Magistrate Judge Peebles granted Plaintiff's motion to proceed

2014 U.S. Dist. LEXIS 99990, *

Page 2

*in forma pauperis* and then conducted an initial review of the complaint. [*3] *See* Dkt. No. 19. Magistrate Judge Peebles noted that Plaintiff's complaint failed to meet the minimal pleading standards set forth in Rule 8 of the Federal Rules of Civil Procedure, as well as *Twombly* and its progeny. *See id.* at 7. In light of his *pro se* status, however, Magistrate Judge Peebles considered Plaintiff's subsequent filings to determine if he has set forth a plausible claim against any named Defendant. *See id.* at 8.

Magistrate Judge Peebles first found that Defendants Smith and White are entitled to absolute immunity because Plaintiff's claims against them are associated with his prosecution in Broome County. *See id.* at 8-9. Further, the report found that Plaintiff's claims brought pursuant to 18 U.S.C. § 241 should be dismissed because it is a criminal statute that does not give rise to a private cause of action. *See id.* at 9 n.6 (citations omitted). Next, Magistrate Judge Peebles concluded that Plaintiff's claims against the Broome County Courts must be dismissed because they are an extension of the state, immune from suit under the Eleventh Amendment. *See id.* at 10. Thereafter, Magistrate Judge Peebles found that the Court should dismiss Plaintiff's claims against Defendant [*4] American Bar Association ("ABA") because Plaintiff failed to allege any facts to plausibly suggest that Defendant ABA is a state actor, or that it acted under color of state law when allegedly violating Plaintiff's rights. *See id.* at 10-11. Finally, Magistrate Judge Peebles recommended that the Court dismiss all claims with prejudice, except those asserted against Defendant ABA. *See id.* at 12-13.

Currently before the Court are Magistrate Judge Peebles Report, Recommendation, and Order, and Plaintiff's objections thereto. Additionally pending before the Court are several letter motions, along with an amended complaint Plaintiff filed after the issuance of the Report, Recommendation, and Order.

## III. DISCUSSION

### A. Redemptionist and sovereign citizen theories

Plaintiff's assertions appear to be based, at least in part, on the "redemptionist" theory or the related "sovereign citizen" theory, which are frivolous legal theories that have been consistently rejected by federal courts. *See Monroe v. Beard*, 536 F.3d 198, 203 n.4 (3d Cir. 2008). The United States Court of Appeals for the Third Circuit explained:

> "Redemptionist" theory . . . propounds that a person has a split personality: a real person [*5] and a fictional person called the "strawman." The "strawman" purportedly came into being when the United States went off the gold standard in 19[3]3, and, instead, pledged the strawman of its citizens as collateral for the country's national debt. Redemptionists claim that government has power only over the strawman and not over the live person, who remains free. Individuals can free themselves by filing UCC financing statements, thereby acquiring an interest in their strawman. Thereafter, the real person can demand that government officials pay enormous sums of money to use the strawman's name or, in the case of prisoners, to keep him in custody. If government officials refuse, inmates are encouraged to file liens against correctional officers and other prison officials in order to extort their release from prison. Adherents of this scheme also advocate that inmates copyright their names to justify filing liens against officials using their names in public records such as indictments or court papers.

*Id.* (citation omitted).[1]

1  The Court notes that Plaintiff was convicted of Falsifying Business Records in the First Degree.

Plaintiff also apparently adheres to the Redemptionist theory regarding [*6] the use of capital letters:

> Redemptionists claim that by a birth certificate, the government created strawmen out of its citizens. A person's name spelled in English, that is with initial capital letters and small letters, represents the real person, that is, the flesh and blood person. Whenever a person's name is written in total capitals, however, as it is on a birth certificate, the Redemptionists believe that only the strawman is referenced, and the flesh and blood person is not involved.

*McLaughlin v. CitiMortgage, Inc.*, 726 F. Supp. 2d 201, 210 (D. Conn. 2010) (internal quotation marks omitted); *see also Bryant v. Wash. Mut. Bank*, 524 F. Supp. 2d 753, 758-61 (W.D. Va. 2007).

Theories presented by redemptionist and sovereign citizen adherents have not only been rejected by the courts, but also recognized as frivolous and a waste of

court resources. *See McLaughlin v*, 726 F. Supp. 2d at 210 (providing detailed explanation of the redemptionist theory and rejecting it); *Charlotte v. Hansen*, 433 Fed. Appx. 660, 661 (10th Cir. 2011) (rejecting the sovereign citizen theory as having no conceivable validity in American law) (citation omitted). A prisoner's attempt "to avoid the consequences [*7] of his criminal conviction" based on the redemptionist theory, has been recognized as "legally frivolous," *Ferguson-El v. Virginia*, No. 3:10CV577, 2011 U.S. Dist. LEXIS 92557, 2011 WL 3652327, *3 (E.D. Va. Aug. 18, 2011), and civil cases based on redemptionist and sovereign citizen theories have been found to be "utterly frivolous" and "patently ludicrous," using "tactics" that are "a waste of their time as well as the court's time, which is paid for by hard-earned tax dollars." *Barber v. Countrywide Home Loans, Inc.*, No. 2:09cv40, 2009 U.S. Dist. LEXIS 123939, 2010 WL 398915, *4 (W.D.N.C. Oct. 7, 2009).

In short, Plaintiff seeks to avoid the consequences of his conviction by suggesting he exists as two separate legal entities and that the State of New York and Broome County do not have jurisdiction over both entities and thus must release him and pay him damages. Such a theory is legally frivolous. *See Tirado v. New Jersey*, No. 10-3408(JAP), 2011 U.S. Dist. LEXIS 32337, 2011 WL 1256624, *4-5 (D.N.J. Mar. 28, 2011) (observing a similar argument "has absolutely no legal basis"); *Marshall v. Fla. Dep't Corr.*, No. 10-CV-20101, 2010 U.S. Dist. LEXIS 142576, 2010 WL 6394565, *1 (S.D. Fla. Oct. 27, 2010). Although the Court finds that these theories are frivolous, in light of his *pro se* status, the Court [*8] will consider each possible claim in greater detail.

## B. The Report, Recommendation, and Order

Section 1915(e)(2)(B) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "(2). . . the court shall dismiss the case at any time if the court determines that -- . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[2] Thus, although the Court has the duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution . . . in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond, . . ." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted), the court also has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action *in forma pauperis*.[3]

[2] To determine whether an action is frivolous, a court must look to see whether the complaint [*9] "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989).

[3] "Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915(e) is appropriate to prevent abuses of the process of the court," *Nelson v. Spitzer*, No. 9:07-CV-1241, 2008 U.S. Dist. LEXIS 6494, 2008 WL 268215, *1 n.3 (N.D.N.Y. Jan. 29, 2008) (citation omitted), as well as "to discourage the filing of [baseless lawsuits], and [the] waste of judicial . . . resources[.]" *Neitzke*, 490 U.S. at 327.

When reviewing a complaint, the court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading that sets forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "'is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, . . . prepare an adequate defense,'" and determine whether the doctrine of res judicata is applicable. *Hudson v. Artuz*, No. 95 CIV. 4768, 1998 U.S. Dist. LEXIS 18625, 1998 WL 832708, *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) [*10] (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977))) (other citation omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citation omitted). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When a party [*11] files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions

of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1) (2006). When a party, however, files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 U.S. Dist. LEXIS 26809, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1) (2006).

A litigant's failure to file objections to a magistrate judge's report-recommendation, even when that litigant is proceeding *pro se*, waives any challenge to the report on appeal. *See Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (holding that, "[a]s a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point" (citation omitted)). [*12] A *pro se* litigant must be given notice of this rule; notice is sufficient if it informs the litigant that the failure to timely object will result in the waiver of further judicial review and cites pertinent statutory and civil rules authority. *See Frank v. Johnson*, 968 F.2d 298, 299 (2d Cir. 1992); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (holding that a *pro se* party's failure to object to a report and recommendation does not waive his right to appellate review unless the report explicitly states that failure to object will preclude appellate review and specifically cites 28 U.S.C. § 636(b)(1) and Rules 72, 6(a) and former 6(e) of the Federal Rules of Civil Procedure).

Having reviewed the Report, Recommendation, and Order and Plaintiff's objections thereto, the Court finds that Magistrate Judge Peebles correctly determined that Plaintiff's claims should be dismissed. As explained below, however, the Court rejects Magistrate Judge Peebles' recommendation insofar as it found that Plaintiff should be permitted a chance to amend his complaint as to Defendant ABA.

Section 1983 itself does not create any substantive rights; rather, it provides a procedural mechanism [*13] for redressing the deprivation of rights created by the Constitution or laws of the United States. *See Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985)). To state a cognizable claim under Section 1983, a plaintiff must allege that "'(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States.'" *Weiss v. Inc. Village of Sag Harbor*, 762 F. Supp. 2d 560, 568 (E.D.N.Y. 2011) (quoting *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999)).

The Supreme Court, in *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982), established a two-prong test for determining when a private party's actions can be deemed to satisfy Section 1983's requirement that the challenged conduct was "under color of state law." Actions of a private party can be deemed "fairly attributable" to the state, and therefore treated as action taken "under color of state law," when (1) the deprivation is "caused by the exercise of some right or privilege created by the [*14] State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and (2) "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Hollander v. Copacabana Nightclub*, 624 F.3d 30, 33 (2d Cir. 2010) (quoting *Lugar*, 457 U.S. at 937). A private party's actions may be attributable to the state under the second *Lugar* prong if it meets one of three tests: (1) "The 'compulsion test': the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state"; (2) "The 'public function test': the entity 'has been delegated a public function by the [s]tate'"; or (3) "The 'joint action test' or 'close nexus test': the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies." *Hollander*, 624 F.3d at 34 (quoting *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (internal citations omitted)).

In the present matter, Defendant ABA is a private party which does not meet any of the three tests set forth above. Courts throughout the United [*15] States have already addressed this question and they have unanimously held that the American Bar Association is not a state actor for purposes of a Section 1983 action. *See Hu v. American Bar Ass'n*, 334 Fed. Appx. 17, 18-19 (7th Cir. 2009) (finding that the district court properly dismissed the plaintiff's complaint because the ABA is not a state actor); *Lawline v. American Bar Ass'n*, 956 F.2d 1378, 1385 (7th Cir. 1992) (concluding that "private bar associations are not state actors for the purpose of Section 1983"); *Rohan v. American Bar Ass'n*, No. 93 CV 1338, 1995 U.S. Dist. LEXIS 21944, 1995 WL 347035, *6-*7 (E.D.N.Y. May 31, 1995) (holding that the ABA is a professional association, not a state actor, even though admission to practice law in New York State requires graduation from an ABA-accredited law school, because "the State of New York has not explicitly delegated to the ABA its responsibility for setting the requirements that an individual must meet in order to be licensed as an attorney-at-law" and "any conferral of monopoly status on the ABA by New York State does not convert the ABA into a state actor"); *see also The Real Estate Bar*

*Ass'n for Mass., Inc. v. Nat'l Real Estate Info. Servs.*, 608 F.3d 110, 121-22 (1st Cir. 2010) [*16] (finding that state bar association was not a state actor).

In the present matter, the Court agrees that Defendant ABA is not a state actor for Section 1983 purposes. New York has not expressly delegated to the ABA its responsibility for setting the requirements to practice law in New York; rather, to become a member of the New York Bar, an individual must comply with the Rules of the New York Court of Appeals on admission to practice. *See Rohan*, 1995 U.S. Dist. LEXIS 21944, 1995 WL 347035, at *5. Further, the ABA was neither established by the State of New York, nor is it funded or supported by the State. *See* 1995 U.S. Dist. LEXIS 21944, [WL] at *7 (citations omitted). Additionally, school accreditation has been recognized as a function of private entities, rather than one that "has been traditionally the exclusive prerogative of the State." *Id.* (quotation and other citation omitted).

Based on the foregoing, the Court finds that Defendant ABA is not a state actor. As such, the Court rejects Magistrate Judge Peebles' recommendation only insofar the report recommended that the Court dismiss the claims against Defendant ABA without prejudice. Although the Court should generally permit a *pro se* litigant an opportunity to amend, dismissal with [*17] prejudice is appropriate where, as here, any amendment of the complaint would be futile.

Further, the Court finds that Magistrate Judge Peebles correctly determined that Defendants Smith and White are entitled to absolute immunity since Plaintiff has raised claims against them in their capacities as a judge and prosecutor. *See Hill v. City of New York*, 45 F.3d 653, 660-61 (2d Cir. 1995) (quotation omitted); *DuQuin v. Kolbert*, 320 F. Supp. 2d 39, 40-41 (W.D.N.Y. 2004) (citation omitted). Additionally, Plaintiff's claims against the Broome County Courts are barred by the Eleventh Amendment. *See Thomas v. Bailey*, No. 10-cv-51, 2010 U.S. Dist. LEXIS 15331, 2010 WL 662416, *1 (E.D.N.Y. Feb. 22, 2010). Finally, to the extent that Plaintiff is seeking his immediate release from custody, such relief is only available from this Court by way of a writ of habeas corpus, issued pursuant to 28 U.S.C. § 2254. *See Preiser v. Rodriguez*, 411 U.S. 475, 498-99, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1975); *see also Brown v. Freeport Police Dept.*, Nos. 13 CV 4047, 13 CV 6514, 2014 U.S. Dist. LEXIS 8524, 2014 WL 279847, *5 (E.D.N.Y. Jan. 23, 2014) (citation omitted).

**C. Plaintiff's amended complaint**

In his amended complaint, Plaintiff names as Defendants the "United States of America/Foreign Corporation [*18] of United States," and the State of New York, as well as the previously named Defendants. *See* Dkt. No. 34 at 1-2. In the amended complaint, Plaintiff claims that the "United States of America is guilty of criminal infringement of intellectual property, failure of consideration, act of indemnity, insurance fraud, securities fraud," as well as an apparent violation of section 34 of the Judiciary Act[4] and a conspiracy with the other named Defendants in violation of 18 U.S.C. § 241. *See id.* at 4: Plaintiff claims that Defendants' actions were "in violation of misnomer contracts of surety" and led to his "wrongfull [sic] imprisonment via commercial claims alleging DEATH and DEBT." *Id.* Plaintiff is seeking his immediate release, in addition to $150,0000,000 "upon court ordered 'Release' from cestui que vie life insurance policy and foreign corporation of United States." *Id.* at 6. Additionally, Plaintiff asks the Court to "expunge all criminal proceedings, charges, finger prints, DNA, blood, mugshots, arrest/arrest record of alleged charges do to illegal commercial . . . surety contracts alleging DEATH or DEBT upon 'RELEASE' being granted." *Id.*

4 Originally § 34 of the Judiciary Act of 1789, [*19] the Rules of Decision Act, now contained in 28 U.S.C. § 1652, reads: "The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply." It is unclear how an improper application of the Rules of Decision Act violated Plaintiff's rights and Plaintiff's nearly incomprehensible filings provide no insight.

Having reviewed the amended complaint, the Court finds that Plaintiff has failed to plausibly allege that he is entitled to any of the relief he seeks. A plaintiff may not collect damages for his alleged wrongful imprisonment or conviction without first showing "that [his] conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 487, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). Here, Plaintiff has made no such showing and a review of the Department of Corrections and Community Supervision website demonstrates [*20] that Plaintiff is still incarcerated. Additionally, 18 U.S.C. § 241 is a criminal statute which does not create a private cause of action. *See Storm-Eggink v. Gottfried*, 409 Fed. Appx. 426, 427 (2d Cir. 2011) (citing cases).

Again, as discussed above, Plaintiff's claims against Defendants Smith and White must be dismissed because they are entitled to absolute immunity. *See Hill*, 45 F.3d

at 660-61 (quotation omitted); *DuQuin*, 320 F. Supp. 2d at 40-41 (citation omitted). Additionally, Plaintiff's claims against the Broome County Courts and the State of New York are barred by the Eleventh Amendment. *See Thomas*, 2010 U.S. Dist. LEXIS 15331, 2010 WL 662416, at *1. Further, to the extent that Plaintiff is seeking his immediate release from custody, such relief is only available from this Court by way of a writ of habeas corpus, issued pursuant to 28 U.S.C. § 2254. *See Preiser*, 411 U.S. at 498-99; *see also Brown*, 2014 U.S. Dist. LEXIS 8524, 2014 WL 279847, at *5 (citation omitted). Finally, Plaintiff alleges no facts against Defendant United States. Rather, the United States appears to have been included as a Defendant solely under Plaintiff's ludicrous sovereign citizen and redemptionist theories, which are subject to dismissal.

Based on the foregoing, [*21] the Court finds that Plaintiff's amended complaint fails to set forth any non-frivolous causes of action. Since permitting additional amendment would be futile, Plaintiff's amended complaint is dismissed with prejudice.

In view of the frivolous nature of Plaintiff's claims, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and, therefore, *in forma pauperis* stat us is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962); *see also Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000).

## IV. CONCLUSION

After carefully considering Magistrate Judge Peebles' Report, Recommendation, and Order, Plaintiff's objections thereto, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** t hat Magistrate Judge Peebles' October 16, 2013 Report, Recommendation, and Order is **ADOPTED in part and REJECTED in part;**[5] and the Court further

> 5    Magistrate Judge Peebles' Report, Recommendation, and Order is only rejected insofar as it recommended that the Court dismiss Defendant ABA without prejudice.

**ORDERS** that Plaintiff's complaint and amended complaint are **DISMISSED with prejudice**; and the [*22] Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall terminate all pending motions not addressed in this Memorandum-Decision and Order as moot; and the Court further

**ORDERS** that the Clerk of the Court shall serve Plaintiff with a copy of this Memorandum-Decision and Order.

**IT IS SO ORDERED**.

Dated: July 23, 2014

Albany, New York

/s/ Mae A. D'Agostino

**Mae A. D'Agostino**

**U.S. District Judge**



LEON PAT FERGUSON-EL, Plaintiff, v. STATE OF VIRGINIA, et al., Defendants.

Civil Action No. 3:10CV577

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA, RICHMOND DIVISION

2011 U.S. Dist. LEXIS 92557

August 9, 2011, Decided
August 18, 2011, Filed

**SUBSEQUENT HISTORY:** Motion denied by Ferguson-El v. Virginia, 2011 U.S. Dist. LEXIS 109414 (E.D. Va., Sept. 25, 2011)

**COUNSEL:** [*1] Leon Pat Ferguson-El, "Public Minister" also known as Leon Pat Ferguson, Plaintiff, Pro se, Oakwood, VA.

**JUDGES:** Robert E. Payne, Senior United States District Judge.

**OPINION BY:** Robert E. Payne

**OPINION**

**MEMORANDUM OPINION**

Leon Pat Ferguson-El, a Moorish-American Virginia inmate proceeding pro se and in forma pauperis, filed this civil action. By Memorandum Order entered on April 25, 2011, the Court noted that Ferguson-El's complaint consisted almost entirely of legal conclusions and directed Ferguson-El to file a particularized complaint. The matter is before the Court for evaluation of Ferguson-El's Particularized Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A.

This Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); see 28 U.S.C. § 1915A. The first standard includes claims based upon "'an indisputably meritless legal theory,'" or claims where the "'factual contentions are clearly baseless.'" Clay v. Yates, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting Neitzke v. Williams, 490 U.S. 319, 327, 109 S.

Ct. 1827, 104 L. Ed. 2d 338 (1989)). The second standard is the familiar standard for a motion to dismiss [*2] under Fed. R. Civ. P. 12(b)(6). As explained below, Ferguson-El's Particularized Complaint is factually and legally frivolous.

**I. Summary of Allegations**

Ferguson-El provides the following introduction in his **"STATEMENT OF FACTS":**

> Plaintiff, asserts a claim that is undiable by the Defendant(s)that LEON PAT FERGUSON®, is a fictitious named (DEBTOR), a strawman, or dummy corporation created by the government "STATE OF VIRGINIA", without the knowledge of intent of the natural person "living breathing Man" Plaintiff, only exists under the COLOR of law, and claiming only to be legally incorporated for the purposes of commerce, and exercising the power and functions of a corporation, without actual lawful authority to do so, but strictly for the benefit of the government "STATE OF VIRGINIA", and its commerce. (As in the present situation of a U.S. Corporation in Puerto Rico, see (BMF) Business Master File). The Defendant(s) has created the Public "vessel" LEON PAT FERGUSON®, and continue the unlawful seizure and unlawful imprisonment etc., of the "living breathing Man" Plaintiff, for interstate and foreign commerce for profit under Admiralty and Maritime jurisdiction of the UNITED

STATES, by [*3] its co-business partner the commercial corporate government juridical construct d.b.a. STATE OF VIRGINIA, under COLOR of law and office.

Plaintiff, asserts a claim that he is a Moorish American National a "living breathing Man" and that the commercial corporate government juridical construct d.b.a. STATE OF VIRGINIA, has failed to produce any Admiralty, Maritime contract through Plaintiff's administrative process #P02904REP, that would bind the Plaintiff to some cause of the performance [U.C.C. § 8.2-501 and U.C.C. § 1-201. COV], demand styled STATE OF VIRGINIA v. LEON PAT FERGUSON under Cause(s) C-253-7-20, with full disclosue, knowledge, understanding of the terms, conditions, and obligation thereof would become a party as would be evidenced by Plaintiff's bona fide signature [U.C.C. § 8.1-201(39) COV], being affixed to said contracts.

And that the Plaintiff voluntarily as a "living breathing Man" Plaintiff allowed the Defendant(s) repeated seizure of Plaintiff in commerce under COLOR of law and office. Plaintiff is entitled to relief sought within his initial pleading for Plaintiff is an intervening third party who is being injured by the actions of the Defendant(s) artfully continuing [*4] of the unlawful seizure, unlawful imprisonment, of a "living breathing Man" while hiding behind the corporate veil of the commercial corporate government juridical construct d.b.a. STATE OF VIRGINIA. It is a grievous injury for a corporation to injure a "living breathing Man" by act(s) of its agents/actors of STATE OF VIRGINIA.

(Part. Compl. 2-3 (paragraph numbers omitted.) [1] Thereafter, Ferguson-El provides an equally incoherent discussion of his theories as to why he believes the named defendants [2] violated his civil rights and why he is entitled to relief. For example, Ferguson-El alleges:

Plaintiff, asserts that the Defendant(s) in their individual capacities are equally responsible for the violation of 18 U.S.C.A. § 1201(a)(1)(2), by the fictitious process "STATE OF VIRGINIA v. LEON FERGUSON ARLINGTON COUNTY CIRCUIT COURT Cause(s) C-25307-20, has place Plaintiff a "living breathing Man" within Admiralty, Maritime jurisdiction of the territorial jurisdiction of the United States, the commercial corporate government juridical construct d.b.a. STATE OF VIRGINIA. Section 1201(b) of Title 18, expresses that "with respect to subsection (a)(1), the failure to release the victim "Plaintiff" [*5] within twenty-four hours after he shall have been unlawfully seizure, confined . . . shall create a rebuttable presumption. (Emphasis added)

(Id. at 4.)

1  The Court has corrected the spacing in the quotations to Ferguson-El's Particularized Complaint. Otherwise, the errors and alterations appear in the Particularized Complaint.
2  Ferguson-El names as defendants various state officials who are responsible for his continued detention, including Gene Johnson. Ferguson-El describes Johnson as "dba DIRECTOR for the commercial enterprise VIRGINIA DEPARTMENT OF CORRECTION, is the Chief warehouse man for the commercial warehouses, that houses biological property, for the commercial corporate government juridical construct d.b.a. STATE OF VIRGINIA." (Part. Compl. 1.)

## III. ANALYSIS

Ferguson-El apparently adheres to Redemptionist theory. See Monroe v. Beard, 536 F.3d 198, 203 n.4 (3d Cir. 2008). The United States Court of Appeals for the Third Circuit explained:

"Redemptionist" theory . . . propounds that a person has a split personality: a real person and a fictional person called the "strawman." The "strawman" purportedly came into being when the United States went off the gold standard in 1993, and, [*6] instead, pledged the strawman of its citizens as collateral for the country's national debt. Redemptionists claim that government has power only over the strawman and not over the live person, who remains free. Individuals can free themselves by filing UCC financing statements, thereby acquiring an interest in their strawman. Thereafter, the real person can demand that government offi-

cials pay enormous sums of money to use the strawman's name or, in the case of prisoners, to keep him in custody. If government officials refuse, inmates are encouraged to file liens against correctional officers and other prison officials in order to extort their release from prison. Adherents of this scheme also advocate that inmates copyright their names to justify filing liens against officials using their names in public records such as indictments or court papers.

Id. Ferguson-El also apparently adheres to the Redemptionist theory regarding the use of capital letters:

Redemptionists claim that by a birth certificate, the government created strawmen out of its citizens. A person's name spelled in English, that is with initial capital letters and small letters, represents the real person, that is, the [*7] flesh and blood person. Whenever a person's name is written in total capitals, however, as it is on a birth certificate, the Redemptionists believe that only the strawman is referenced, and the flesh and blood person is not involved.

McLaughlin v. CitiMortgage, Inc., 726 F. Supp. 2d 201, 210 (D. Conn. 2010) (internal quotation marks omitted); see also Bryant v. Wash. Mut. Bank, 524 F. Supp. 2d 753, 758-61 (W.D. Va. 2007).

In short, Ferguson-El seeks to avoid the consequences of his criminal conviction by suggesting he exists as two separate legal entities and that the State of Virginia does not have jurisdiction over both entities and thus must release him, "the living breathing Man" (Part. Compl. 2) and pay him damages. Such a theory is legally frivolous. See Tirado v. New Jersey, No. 10-3408 (JAP), 2011 U.S. Dist. LEXIS 32337, 2011 WL 1256624, at *4-5 (D.N.J. Mar. 28, 2011) (observing a similar argument "has absolutely no legal basis"); Marshall v. Fla. Dep't Corr., No. 10-20101-CIV-GOLD, 2010 U.S. Dist. LEXIS 142576, 2010 WL 6394565, at *1 (S.D. Fla. Oct. 27, 2010). The action will be DISMISSED. The Clerk will be DIRECTED to note the disposition of the action for purposes of 28 U.S.C. § 1915(g).

The Clerk is DIRECTED to send a copy of this [*8] Memorandum Opinion to Ferguson-El.

An appropriate Order shall issue.

/s/ REP

Robert E. Payne

Senior United States District Judge

Date: August 9, 2011
Richmond, Virginia



WILLIAM G. BARBER; and MELINDA BARBER, Plaintiffs, vs. COUNTRY-
WIDE HOME LOANS, INC.; VIP JIMMY MUNOZ; SHEILA ZUCKERMAN; and
ADRIAN ELY, Defendants.

2:09cv40

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF
NORTH CAROLINA, BRYSON CITY DIVISION

2009 U.S. Dist. LEXIS 123939

October 7, 2009, Decided
October 8, 2009, Filed

**SUBSEQUENT HISTORY:** Accepted by, Complaint dismissed at Barber v. Countrywide Home Loans, Inc., 2010 U.S. Dist. LEXIS 5527 (W.D.N.C., Jan. 25, 2010)

**PRIOR HISTORY:** Barber v. Countrywide Home Loans, Inc., 2009 U.S. Dist. LEXIS 83618 (W.D.N.C., Sept. 9, 2009)

**COUNSEL:** [*1] William G. Barber, Plaintiff, Pro se, Cashiers, NC.

Melinda Barber, Plaintiff, Pro se, Cashiers, NC.

For Countrywide Home Loans, Inc., Jimmy Munoz, Adrian Ely, Defendants: Stacie C. Knight, LEAD ATTORNEY, Charlotte, NC.

**JUDGES:** Dennis L. Howell, United States Magistrate Judge.

**OPINION BY:** Dennis L. Howell

**OPINION**

**MEMORANDUM AND RECOMMENDATION**

THIS MATTER is before the court on defendants Countrywide Home Loans, Inc.'s, Jimmy Munoz's, and Adrian Ely's Motion to Dismiss under Rules 9(b) and 12(b)(6). Plaintiffs are proceeding *pro se* and have been advised of their obligation to respond and the time for doing so. See Roseboro Order, Docket Entry #7. Plaintiffs were allowed up to and inclusive of September 25, 2009, to respond, but no response was filed.

**FINDINGS AND CONCLUSIONS**

**I. Nature of Action and Defendants' Motion**

In this action, which appears to involve a mortgage loan on a residential property in the mountains of North Carolina, plaintiffs claim that they are "seeking a remedy in Admiralty." Compl., at p. 2&4. They demand cancellation and discharge of their mortgage loan debt. Id., at p. 6. Plaintiffs allege that a

> note was created on our credit and signature . . . and was not an asset of Countrywide until we gave [*2] it to the bank.
>
> * * *
>
> When Countrywide accepted our mortgage 'Note in exchange for credits to [our] borrower's transaction account', it became obligated to us, the Third Party Plaintiffs.

Id., at pp. 4-5 (errors and brackets in the original). Countrywide allegedly "sold the original note and failed to give credit to our account." Id., at 4 (emphasis deleted). Plaintiffs demand to "inspect the 'Original Mortgage Note', with wet ink signatures, along with the Title Page that shows whether or not the mortgage has been satisfied." Id. (errors in the original).

The Complaint also references an "Agreement" that "did not provide the Plaintiffs with knowledge of the

nature of the transaction." Id., at 5. According to Plaintiffs, the Agreement "concealed the fact that Countrywide exchanged our Note [which was our Asset] for a credit to the borrower's transaction Account." Id. (emphasis deleted; bracketed material in the original). Plaintiffs claim that this "credit" loan was unconstitutional. Id., at pp. 2 & 6. They state that they "tendered a lawful offer to Countrywide to settle" their alleged claims, but that Countrywide refused the "lawful offer and has refused to zero the account." Id., at 6. [*3] Plaintiffs allege that, as a result, defendants are liable for "a Dishonor in Commerce, Fraud, Theft of Public Funds, Racketeering, and Conspiracy," and the debt has been discharged. Id., at pp. 5-6.

Plaintiffs also assert as a "Counterclaim" a demand for "$ 1,000,000.00 per count Per Third Party Defendant." Id., at p. 12. Plaintiffs also demand payment of the "$ 2,200,000.00 Countrywide received when it sold our Note and did not give us the credit it exchanged for our Note." Id., at p. 11.

While captioning the matter as an action against Countrywide and individual defendants Munoz, Zuckerman, and Ely, plaintiffs' Complaint contains no allegations against them. Plaintiffs do make a "demand that . . . Jimmy Munoz, Shelia Zuckerman, and Adrian Ely produce their Proof of Claim." Id., at p. 4.

## II. Applicable Standards

### A. Rule 9(b) Standard

When pleading fraud, the notice pleading requirements are inapplicable and special rules of pleading come into play. Rule 9(b), Federal Rules of Civil Procedure, provides:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition[s] of mind of a person [*4] may be averred generally.

The specificity required in claiming fraud is an exception to the provisions of notice pleading found in Rules 8(a),(e), and (f), Federal Rules of Civil Procedure. See also N.C. Gen. Stat. Chapter 1A-1, Rule 8. The general rule that pleadings are to be given liberal construction does not apply to claims of fraud. Rosenthal v. Perkins, 42 N.C. App. 449, 257 S.E.2d 63 (1979).

Because review is limited to the face of the pleadings and accompanying attachments, factual support outside of the record may not be considered and is treated as

if it does not exist. A plaintiff must be particular as to the facts upon which its claim of fraud arises. Hoyle v. Bagby, 253 N.C. 778, 117 S.E.2d 760 (1961). An allegation which merely states that the acts specified constituted fraud is conclusory. Patuxent Development Co. v. Bearden, 227 N.C. 124, 41 S.E.2d 85 (1947). Conclusory allegations of fraud are insufficient to meet the requirement of particularity. Smith v. Central Soya of Athens, Inc., 604 F. Supp. 518 (1985). The issue becomes whether proof of the facts as alleged in the Complaint would entitle the plaintiffs to relief. Brooks Equipment & Mfg. Co. v. Taylor, 230 N.C. 680, 55 S.E.2d 311 (1949). Reliance on discovery to support [*5] a claim of fraud is inappropriate. "A plaintiff must know about what he is complaining before he files [a] suit [claiming fraud]." McFarland v. Memorex Corp., 493 F. Supp. 631, 656 (N.D. Cal. 1980). The district court's opinion in McFarland dovetails with the requirement of Rule 9(b) that "the circumstances constituting fraud or mistake shall be stated with particularity." Rule 9(b), Fed. R. Civ. P. To allow otherwise would be to encourage actions for fraud based on "information and belief" rather than hard facts and firsthand knowledge.

### B. Rule 12(b)(6): Applicable Standard

Until recently, a complaint could not be dismissed under Rule 12(b)(6) unless it appears certain that the plaintiffs can prove no set of facts which would support their claim and entitle them to relief. Neitzke v. Williams, 490 U.S. 319, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989); Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). This "no set of facts" standard has been specifically abrogated by the Supreme Court in recent decisions.

First, in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), the Court held that the "no set of facts" standard first espoused in Conley, supra, only describes the "breadth of opportunity to prove what an adequate complaint claims, [*6] not the minimum adequate pleading to govern a complaint's survival." Id., at 563. The Court specifically rejected use of the "no set of facts" standard because such standard would improperly allow a "wholly conclusory statement of claim" to "survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." Id., at 561 (alteration in original).

Post Twombley, to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts in his complaint that "raise a right to relief above the speculative level." Id., at 555.

[A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .

Id. (second alteration in original; citation omitted). Further, a complaint will not survive Rule 12(b)(6) review where it contains "naked assertion[s] devoid of further factual enhancement." Id., at 557. Instead, a plaintiff must now plead sufficient facts to state a claim for relief that is *"plausible* on its face." Id., at 570 (emphasis added).

While the [*7] Court was clear in Twombly that Conley was no longer controlling, see Twombly, 550 U.S. at 563, and Felman Production Inc. v. Bannai, 2007 U.S. Dist. LEXIS 81365, 2007 WL 3244638, at *4 (S.D.W.Va. 2007), it again visited the Rule 12(b)(6) pleading standard in Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 173 L. Ed. 2d 868 (May 18, 2009). In Ashcroft, the Court held that Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Id., 129 S.Ct., at 1949. The Court explained that, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" Id. (citing Twombly, supra; emphasis added). What is plausible is defined by the Court:

> [a] claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Id. This "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." Id. Thus, a complaint fall short of the plausibility standard where plaintiff "pleads facts that are 'merely consistent with' a defendant's liability . . . ." Id. While the court [*8] accepts plausible factual allegations made in the Complaint as true and considers those facts in the light most favorable to plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

As reflected above in the discussion of the allegations of the Complaint herein, the court has accepted as true all of the factual allegations contained in the Complaint, and, as well, has identified "pleadings that, because they are no more than conclusions, are not entitled

to the assumption of truth." Ashcroft, supra, at 1950. As reflected below, the court has assumed the veracity of any well-pleaded factual allegations "and [will] then determine whether they plausibly give rise to an entitlement to relief." Id. (alteration added).

## III. Discussion

### A. Introduction

The court has not accepted as true the legal theories and conclusions which constitute the bulk of the Complaint in this matter. The court has accepted as true plaintiffs' allegations of the existence of a mortgage, a promissory note, a deed of trust, the sale of the loan to a third [*9] party, and the inference that Countrywide is either servicing such loan and/or has commenced to foreclose on the loan. Even when those allegations are accepted as true, there simply is no cognizable cause of action alleged. Put another way, plaintiffs' use of legal terms and importation or phrases from the Uniform Commercial Code cannot create a cause of action that simply does not exist. Indeed, the court notes that plaintiffs are utilizing terminology and making demands that have been utilized by so called "tax protestors" in this court in the past two decades. While the court carefully reads and considers every page of every document that is filed, plaintiffs are advised that such tactics are a waste of their time as well as the court's time, which is paid for by hard-earned tax dollars.

### B. Plaintiffs Fail to State a Cause of Action Upon Which Relief Could be Granted by this Court.

#### 1. Vapor and Unlawful Money Claims

To avoid dismissal based on Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must provide "more than labels and conclusions . . . ." Twombly, supra, at 1965. Plaintiffs allege that above actions of Countrywide were committed 'in violation of Article 1 Section 10 of the U.S. Constitution." [*10] Compl., at pp. 2 & 4-6. Plaintiffs state that their damages must be paid in U.S. dollars, "defined ... as [] One Ounce Silver coin of .999 pure silver, or the equivalent par value." Id., at p. 13.

The theories of relief asserted herein are commonly referred to as the "vapor money theory" and the "unlawful money theory." In Demmler v. Bank One N.A., 2006 U.S. Dist. LEXIS 9409, 2006 WL 640499 (S.D. Ohio 2006), [1] the district court explained the vapor money theory prevalent in this type of frivolous litigation:

> Plaintiff alleges that the promissory note he executed is the equivalent of "money" that he gave to the bank. He

contends that [the lender] took his "money," i.e., the promissory note, deposited it into his account without his permission, listed it as an "asset" on its ledger entries, and then essentially lent his own money back to him. He contends that [the lender] . . . "created" the money through its bookkeeping procedures.

2006 U.S. Dist. LEXIS 9409, [WL] at 3. Under the "unlawful money" theory, the issuance of "credit" is said to violate Article 1, Section 10 of the Constitution; thus, the theory goes, only government-issued currency is "legal tender." Rudd v. Keybank, N.A., 2006 U.S. Dist. LEXIS 5357, 2006 WL 212096, at *5 (S.D. Ohio Jan. 25, 2006). Such theories [*11] have been soundly rejected by every court that has considered them, and the undersigned finds as have other courts that it would be a "waste of judicial resources to delve into the voluminous allegations contained in Plaintiff's . . . complaint" because claims based on the "vapor money theory" were "utterly frivolous" and "patently ludicrous." Demmler, supra, 2006 U.S. Dist. LEXIS 9409, [WL] at 3-4. See also Nixon v. Individual Head of St. Joseph Mortgage Co., 615 F. Supp. 898, 900 (N.D. Ind. 1985)(holding "unlawful money" allegations were "absurd"). The undersigned will recommend that plaintiffs' vapor and unlawful money claims be summarily dismissed as they are not cognizable claims.

    1   Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

## 2. Fraud, Racketeering, and Civil Conspiracy.

Plaintiffs also claim that defendants are liable for fraud, racketeering, and civil conspiracy because Countrywide has refused plaintiffs' "lawful offer and has refused to zero the account." Compl., at p. 6. Such claims fail to satisfy either Rule 12(b)(6) or Rule 9(b). From the outset, plaintiffs have made absolutely no plausible [*12] factual allegations upon which a jury could return a verdict in their favor based on fraud, racketeering, or civil conspiracy. Plaintiffs' allegations fail to meet the pleading requirements of Rule 9(b) by sufficiently alleging specific facts that would support these claims.

### a. Fraud

The essential elements of fraud under North Carolina law are (1) a false representation or concealment of a material fact; (2) reasonably calculated to deceive; (3) made with intent to deceive; (4) which does in fact deceive; and (5) resulting in damage to the injured party.

Ragsdale v. Kennedy, 286 N.C. 130, 138, 209 S.E.2d 494 (1974). Rule 9(b) requires that "circumstances constituting fraud . . . shall be stated with particularity," Fed. R. Civ. P. 9(b), which requires "alleging time, place, and content of the fraudulent representation, identity of the person making the representation, and what was obtained as a result of the fraudulent act or representations." Terry v. Terry, 302 N.C. 77, 85, 273 S.E.2d 674 (1981). Plaintiffs allege that Countrywide committed "fraud" by refusing a "lawful offer" and "refus[ing] to zero the account." Compl., at p. 5. Such allegations do not even come close to fraud as plaintiffs have simply alleged [*13] that defendant has done a fundamentally lawful thing, refuse an offer. Plaintiffs' fraud claim must be dismissed and the undersigned will so recommend.

### b. Racketeering

In claiming that defendants are engaged in "racketeering," Compl., at 5, the court assumes that plaintiffs are attempting to invoke RICO under either federal or North Carolina law. See 18 U.S.C. § 1694 et seq.; and N.C.Gen. Stat. § 75D-1 et seq. Under either statutory scheme, plaintiffs allegations are deficient. Under either federal or state law, plaintiffs must allege,

> at a minimum, (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity, otherwise known as a 'predicate act.'

Hoke v. E.F. Hutton & Co., Inc., 91 N.C. App. 159, 163, 370 S.E.2d 857 (1988) (citation omitted). Plaintiffs must also allege a direct nexus between the predicate acts and his alleged injury. Id. Plaintiffs fail to allege any facts supporting their conclusory allegation that defendants engaged in a "pattern of racketeering activity" or any nexus between a predicate act and their alleged injury. Instead, plaintiffs merely allege that their "tender" of a "lawful offer" was rejected by Countrywide. Compl., at p. 6. The undersigned will, therefore, [*14] recommend that plaintiffs' RICO claim be dismissed.

### c. Civil Conspiracy

Plaintiffs' also assert a claim for civil conspiracy against these defendants. As with the previous asserted causes of action, plaintiff puts a lot of stock in Countrywide's supposed rejection of their "lawful offer." This allegation is the only allegation tendered in support of this legal theory.

While there is no freestanding cause of action for "civil conspiracy," the elements of a claim seeking damages for the wrongful acts committed in the course of a civil conspiracy in North Carolina would appear to be:

> (1) an agreement between two or more persons to commit a wrongful act;

> (2) an act in furtherance of the agreement; and

> (3) damage to the plaintiff as a result of the wrongful act.

See Henderson v. LeBauer, 101 N.C. App. 255, 260, 399 S.E.2d 142 (1991). As the district court has recently recognized, this claim cannot be brought independent of properly-alleged claims for underlying wrongdoing, making such claim subject to dismissal if the underlying claims for wrongful conduct are dismissed. Precision Components, Inc. v. C.W. Bearing USA, Inc., 630 F. Supp. 2d 635 (W.D.N.C. 2008) (Reidinger, J.). Here, there are no viable underlying [*15] claims for anything, subjecting such claim to outright dismissal. Further, such claim could not survive even on its own merits as plaintiffs have failed to allege that Countrywide has done anything wrongful under any recognized law. Plaintiffs' claim for civil conspiracy fails as a matter of law, and the undersigned will recommend that it be dismissed.

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that defendants Countrywide Home Loans, Inc.'s, Jimmy Munoz's, and Adrian Ely's Motion to Dismiss under Rules 9(b) and 12(b)(6) (#6) be **ALLOWED,** and that this action be **DISMISSED** in its entirety with prejudice.

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **ten (10)** days of service of same. Failure to file objections to this Memorandum and Recommendation with the district Court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S. Ct. 899, 88 L. Ed. 2d 933 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert.

Signed: October 7, 2009

/s/ Dennis L. Howell

Dennis L. Howell [*16]

United States Magistrate Judge

JUDGMENT IN A CIVIL CASE

DECISION BY COURT. This action having come before the Court by and a decision having been rendered;

IT IS ORDERED AND ADJUDGED that Judgment is hereby entered in accordance with the Court's 01/25/2010 Order.

Signed: January 25, 2010



WILLIAM G. BARBER; and MELINDA BARBER, Plaintiffs, vs. COUNTRY-
WIDE HOME LOANS, INC.; VIP JIMMY MUNOZ; SHEILA ZUCKERMAN; and
ADRIAN ELY, Defendants.

2:09cv40

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF
NORTH CAROLINA, BRYSON CITY DIVISION

2009 U.S. Dist. LEXIS 123939

October 7, 2009, Decided
October 8, 2009, Filed

**SUBSEQUENT HISTORY:** Accepted by, Complaint
dismissed at Barber v. Countrywide Home Loans, Inc.,
2010 U.S. Dist. LEXIS 5527 (W.D.N.C., Jan. 25, 2010)

**PRIOR HISTORY:** Barber v. Countrywide Home
Loans, Inc., 2009 U.S. Dist. LEXIS 83618 (W.D.N.C.,
Sept. 9, 2009)

**COUNSEL:** [*1] William G. Barber, Plaintiff, Pro se,
Cashiers, NC.

Melinda Barber, Plaintiff, Pro se, Cashiers, NC.

For Countrywide Home Loans, Inc., Jimmy Munoz,
Adrian Ely, Defendants: Stacie C. Knight, LEAD AT-
TORNEY, Charlotte, NC.

**JUDGES:** Dennis L. Howell, United States Magistrate
Judge.

**OPINION BY:** Dennis L. Howell

**OPINION**

**MEMORANDUM AND RECOMMENDATION**

THIS MATTER is before the court on defendants
Countrywide Home Loans, Inc.'s, Jimmy Munoz's, and
Adrian Ely's Motion to Dismiss under Rules 9(b) and
12(b)(6). Plaintiffs are proceeding *pro se* and have been
advised of their obligation to respond and the time for
doing so. See Roseboro Order, Docket Entry #7. Plain-
tiffs were allowed up to and inclusive of September 25,
2009, to respond, but no response was filed.

**FINDINGS AND CONCLUSIONS**

**I. Nature of Action and Defendants' Motion**

In this action, which appears to involve a mortgage
loan on a residential property in the mountains of North
Carolina, plaintiffs claim that they are "seeking a remedy
in Admiralty." Compl., at p. 2&4. They demand cancel-
lation and discharge of their mortgage loan debt. Id., at p.
6. Plaintiffs allege that a

> note was created on our credit and sig-
> nature . . . and was not an asset of Coun-
> trywide until we gave  [*2] it to the bank.
>
> * * *
>
> When Countrywide accepted our
> mortgage 'Note in exchange for credits to
> [our] borrower's transaction account', it
> became obligated to us, the Third Party
> Plaintiffs.

Id., at pp. 4-5 (errors and brackets in the original). Coun-
trywide allegedly "sold the original note and failed to
give credit to our account." Id., at 4 (emphasis deleted).
Plaintiffs demand to "inspect the 'Original Mortgage
Note', with wet ink signatures, along with the Title Page
that shows whether or not the mortgage has been satis-
fied." Id. (errors in the original).

The Complaint also references an "Agreement" that
"did not provide the Plaintiffs with knowledge of the

nature of the transaction." Id., at 5. According to Plaintiffs, the Agreement "concealed the fact that Countrywide exchanged our Note [which was our Asset] for a credit to the borrower's transaction Account." Id. (emphasis deleted; bracketed material in the original). Plaintiffs claim that this "credit" loan was unconstitutional. Id., at pp. 2 & 6. They state that they "tendered a lawful offer to Countrywide to settle" their alleged claims, but that Countrywide refused the "lawful offer and has refused to zero the account." Id., at 6. [*3] Plaintiffs allege that, as a result, defendants are liable for "a Dishonor in Commerce, Fraud, Theft of Public Funds, Racketeering, and Conspiracy," and the debt has been discharged. Id., at pp. 5-6.

Plaintiffs also assert as a "Counterclaim" a demand for "$ 1,000,000.00 per count Per Third Party Defendant." Id., at p. 12. Plaintiffs also demand payment of the "$ 2,200,000.00 Countrywide received when it sold our Note and did not give us the credit it exchanged for our Note." Id., at p. 11.

While captioning the matter as an action against Countrywide and individual defendants Munoz, Zuckerman, and Ely, plaintiffs' Complaint contains no allegations against them. Plaintiffs do make a "demand that . . . Jimmy Munoz, Shelia Zuckerman, and Adrian Ely produce their Proof of Claim." Id., at p. 4.

## II. Applicable Standards

### A. Rule 9(b) Standard

When pleading fraud, the notice pleading requirements are inapplicable and special rules of pleading come into play. Rule 9(b), Federal Rules of Civil Procedure, provides:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition[s] of mind of a person [*4] may be averred generally.

The specificity required in claiming fraud is an exception to the provisions of notice pleading found in Rules 8(a),(e), and (f), Federal Rules of Civil Procedure. See also N.C. Gen. Stat. Chapter 1A-1, Rule 8. The general rule that pleadings are to be given liberal construction does not apply to claims of fraud. Rosenthal v. Perkins, 42 N.C. App. 449, 257 S.E.2d 63 (1979).

Because review is limited to the face of the pleadings and accompanying attachments, factual support outside of the record may not be considered and is treated as if it does not exist. A plaintiff must be particular as to the facts upon which its claim of fraud arises. Hoyle v. Bagby, 253 N.C. 778, 117 S.E.2d 760 (1961). An allegation which merely states that the acts specified constituted fraud is conclusory. Patuxent Development Co. v. Bearden, 227 N.C. 124, 41 S.E.2d 85 (1947). Conclusory allegations of fraud are insufficient to meet the requirement of particularity. Smith v. Central Soya of Athens, Inc., 604 F. Supp. 518 (1985). The issue becomes whether proof of the facts as alleged in the Complaint would entitle the plaintiffs to relief. Brooks Equipment & Mfg. Co. v. Taylor, 230 N.C. 680, 55 S.E.2d 311 (1949). Reliance on discovery to support [*5] a claim of fraud is inappropriate. "A plaintiff must know about what he is complaining before he files [a] suit [claiming fraud]." McFarland v. Memorex Corp., 493 F. Supp. 631, 656 (N.D. Cal. 1980). The district court's opinion in McFarland dovetails with the requirement of Rule 9(b) that "the circumstances constituting fraud or mistake shall be stated with particularity." Rule 9(b), Fed. R. Civ. P. To allow otherwise would be to encourage actions for fraud based on "information and belief" rather than hard facts and firsthand knowledge.

### B. Rule 12(b)(6): Applicable Standard

Until recently, a complaint could not be dismissed under Rule 12(b)(6) unless it appears certain that the plaintiffs can prove no set of facts which would support their claim and entitle them to relief. Neitzke v. Williams, 490 U.S. 319, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989); Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). This "no set of facts" standard has been specifically abrogated by the Supreme Court in recent decisions.

First, in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), the Court held that the "no set of facts" standard first espoused in Conley, supra, only describes the "breadth of opportunity to prove what an adequate complaint claims, [*6] not the minimum adequate pleading to govern a complaint's survival." Id., at 563. The Court specifically rejected use of the "no set of facts" standard because such standard would improperly allow a "wholly conclusory statement of claim" to "survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." Id., at 561 (alteration in original).

Post Twombley, to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts in his complaint that "raise a right to relief above the speculative level." Id., at 555.

[A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .

Id. (second alteration in original; citation omitted). Further, a complaint will not survive Rule 12(b)(6) review where it contains "naked assertion[s] devoid of further factual enhancement." Id., at 557. Instead, a plaintiff must now plead sufficient facts to state a claim for relief that is *"plausible* on its face." Id., at 570 (emphasis added).

While the [*7] Court was clear in Twombly that Conley was no longer controlling, see Twombly, 550 U.S. at 563, and Felman Production Inc. v. Bannai, 2007 U.S. Dist. LEXIS 81365, 2007 WL 3244638, at *4 (S.D.W.Va. 2007), it again visited the Rule 12(b)(6) pleading standard in Ashcroft v. Iqbal, ___ U.S. ___ , 129 S.Ct. 1937, 173 L. Ed. 2d 868 (May 18, 2009). In Ashcroft, the Court held that Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Id., 129 S.Ct., at 1949. The Court explained that, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" Id. (citing Twombly, supra; emphasis added). What is plausible is defined by the Court:

> [a] claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Id. This "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." Id. Thus, a complaint fall short of the plausibility standard where plaintiff "pleads facts that are 'merely consistent with' a defendant's liability . . . ." Id. While the court [*8] accepts plausible factual allegations made in the Complaint as true and considers those facts in the light most favorable to plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

As reflected above in the discussion of the allegations of the Complaint herein, the court has accepted as true all of the factual allegations contained in the Complaint, and, as well, has identified "pleadings that, because they are no more than conclusions, are not entitled

to the assumption of truth." Ashcroft, supra, at 1950. As reflected below, the court has assumed the veracity of any well-pleaded factual allegations "and [will] then determine whether they plausibly give rise to an entitlement to relief." Id. (alteration added).

### III. Discussion

### A. Introduction

The court has not accepted as true the legal theories and conclusions which constitute the bulk of the Complaint in this matter. The court has accepted as true plaintiffs' allegations of the existence of a mortgage, a promissory note, a deed of trust, the sale of the loan to a third [*9] party, and the inference that Countrywide is either servicing such loan and/or has commenced to foreclose on the loan. Even when those allegations are accepted as true, there simply is no cognizable cause of action alleged. Put another way, plaintiffs' use of legal terms and importation or phrases from the Uniform Commercial Code cannot create a cause of action that simply does not exist. Indeed, the court notes that plaintiffs are utilizing terminology and making demands that have been utilized by so called "tax protestors" in this court in the past two decades. While the court carefully reads and considers every page of every document that is filed, plaintiffs are advised that such tactics are a waste of their time as well as the court's time, which is paid for by hard-earned tax dollars.

### B. Plaintiffs Fail to State a Cause of Action Upon Which Relief Could be Granted by this Court.

### 1. Vapor and Unlawful Money Claims

To avoid dismissal based on Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must provide "more than labels and conclusions . . . ." Twombly, supra, at 1965. Plaintiffs allege that above actions of Countrywide were committed 'in violation of Article 1 Section 10 of the U.S. Constitution." [*10] Compl., at pp. 2 & 4-6. Plaintiffs state that their damages should be paid in U.S. dollars, "defined ... as [] One Ounce Silver coin of .999 pure silver, or the equivalent par value." Id., at p. 13.

The theories of relief asserted herein are commonly referred to as the "vapor money theory" and the "unlawful money theory." In Demmler v. Bank One N.A., 2006 U.S. Dist. LEXIS 9409, 2006 WL 640499 (S.D. Ohio 2006), [1] the district court explained the vapor money theory prevalent in this type of frivolous litigation:

> Plaintiff alleges that the promissory note he executed is the equivalent of "money" that he gave to the bank. He

contends that [the lender] took his "money," i.e., the promissory note, deposited it into his account without his permission, listed it as an "asset" on its ledger entries, and then essentially lent his own money back to him. He contends that [the lender] . . . "created" the money through its bookkeeping procedures.

2006 U.S. Dist. LEXIS 9409, [WL] at 3. Under the "unlawful money" theory, the issuance of "credit" is said to violate Article I, Section 10 of the Constitution; thus, the theory goes, only government-issued currency is "legal tender." Rudd v. Keybank, N.A., 2006 U.S. Dist. LEXIS 5357, 2006 WL 212096, at *5 (S.D. Ohio Jan. 25, 2006). Such theories [*11] have been soundly rejected by every court that has considered them, and the undersigned finds as have other courts that it would be a "waste of judicial resources to delve into the voluminous allegations contained in Plaintiffs . . . complaint" because claims based on the "vapor money theory" were "utterly frivolous" and "patently ludicrous." Demmler, supra, 2006 U.S. Dist. LEXIS 9409, [WL] at 3-4. See also Nixon v. Individual Head of St. Joseph Mortgage Co., 615 F. Supp. 898, 900 (N.D. Ind. 1985)(holding "unlawful money" allegations were "absurd"). The undersigned will recommend that plaintiffs' vapor and unlawful money claims be summarily dismissed as they are not cognizable claims.

1    Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

## 2. Fraud, Racketeering, and Civil Conspiracy.

Plaintiffs also claim that defendants are liable for fraud, racketeering, and civil conspiracy because Countrywide has refused plaintiffs' "lawful offer and has refused to zero the account." Compl., at p. 6. Such claims fail to satisfy either Rule 12(b)(6) or Rule 9(b). From the outset, plaintiffs have made absolutely no plausible [*12] factual allegations upon which a jury could return a verdict in their favor based on fraud, racketeering, or civil conspiracy. Plaintiffs' allegations fail to meet the pleading requirements of Rule 9(b) by sufficiently alleging specific facts that would support these claims.

### a. Fraud

The essential elements of fraud under North Carolina law are (1) a false representation or concealment of a material fact; (2) reasonably calculated to deceive; (3) made with intent to deceive; (4) which does in fact deceive; and (5) resulting in damage to the injured party.

Ragsdale v. Kennedy, 286 N.C. 130, 138, 209 S.E.2d 494 (1974). Rule 9(b) requires that "circumstances constituting fraud . . . shall be stated with particularity," Fed. R. Civ. P. 9(b), which requires "alleging time, place, and content of the fraudulent representation, identity of the person making the representation, and what was obtained as a result of the fraudulent act or representations." Terry v. Terry, 302 N.C. 77, 85, 273 S.E.2d 674 (1981). Plaintiffs allege that Countrywide committed "fraud" by refusing a "lawful offer" and "refus[ing] to zero the account." Compl., at p. 5. Such allegations do not even come close to fraud as plaintiffs have simply alleged [*13] that defendant has done a fundamentally lawful thing, refuse an offer. Plaintiffs' fraud claim must be dismissed and the undersigned will so recommend.

### b. Racketeering

In claiming that defendants are engaged in "racketeering," Compl., at 5, the court assumes that plaintiffs are attempting to invoke RICO under either federal or North Carolina law. See 18 U.S.C. § 1694 et seq.; and N.C.Gen. Stat. § 75D-1 et seq. Under either statutory scheme, plaintiffs allegations are deficient. Under either federal or state law, plaintiffs must allege,

at a minimum, (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity, otherwise known as a 'predicate act.'

Hoke v. E.F. Hutton & Co., Inc., 91 N.C. App. 159, 163, 370 S.E.2d 857 (1988) (citation omitted). Plaintiffs must also allege a direct nexus between the predicate acts and his alleged injury. Id. Plaintiffs fail to allege any facts supporting their conclusory allegation that defendants engaged in a "pattern of racketeering activity" or any nexus between a predicate act and their alleged injury. Instead, plaintiffs merely allege that their "tender" of a "lawful offer" was rejected by Countrywide. Compl., at p. 6. The undersigned will, therefore, [*14] recommend that plaintiffs' RICO claim be dismissed.

### c. Civil Conspiracy

Plaintiffs' also assert a claim for civil conspiracy against these defendants. As with the previous asserted causes of action, plaintiff puts a lot of stock in Countrywide's supposed rejection of their "lawful offer." This allegation is the only allegation tendered in support of this legal theory.

While there is no freestanding cause of action for "civil conspiracy," the elements of a claim seeking damages for the wrongful acts committed in the course of a civil conspiracy in North Carolina would appear to be:

(1) an agreement between two or more persons to commit a wrongful act;

(2) an act in furtherance of the agreement; and

(3) damage to the plaintiff as a result of the wrongful act.

See Henderson v. LeBauer, 101 N.C. App. 255, 260, 399 S.E.2d 142 (1991). As the district court has recently recognized, this claim cannot be brought independent of properly-alleged claims for underlying wrongdoing, making such claim subject to dismissal if the underlying claims for wrongful conduct are dismissed. Precision Components, Inc. v. C.W. Bearing USA, Inc., 630 F. Supp. 2d 635 (W.D.N.C. 2008) (Reidinger, J.). Here, there are no viable underlying [*15] claims for anything, subjecting such claim to outright dismissal. Further, such claim could not survive even on its own merits as plaintiffs have failed to allege that Countrywide has done anything wrongful under any recognized law. Plaintiffs' claim for civil conspiracy fails as a matter of law, and the undersigned will recommend that it be dismissed.

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY REC-OMMENDED** that defendants Countrywide Home Loans, Inc.'s, Jimmy Munoz's, and Adrian Ely's Motion to Dismiss under Rules 9(b) and 12(b)(6) (#6) be **AL-LOWED,** and that this action be **DISMISSED** in its entirety with prejudice.

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **ten (10)** days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S. Ct. 899, 88 L. Ed. 2d 933 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert.

Signed: October 7, 2009

/s/ Dennis L. Howell

Dennis L. Howell [*16]

United States Magistrate Judge

JUDGMENT IN A CIVIL CASE

DECISION BY COURT. This action having come before the Court by and a decision having been rendered;

IT IS ORDERED AND ADJUDGED that Judgment is hereby entered in accordance with the Court's 01/25/2010 Order.

Signed: January 25, 2010



**RODNEY E. BRANTON, Plaintiff, v. COLUMBIA COUNTY, NEW YORK, et al., Defendants.**

**1:15-CV-0005 (DNH/TWD)**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF NEW YORK**

**2015 U.S. Dist. LEXIS 68226**

**April 17, 2015, Decided
April 17, 2015, Filed**

**SUBSEQUENT HISTORY:** Adopted by, Dismissed by, Motion denied by, As moot, Request denied by, As moot Branton v. Columbia Cnty., 2015 U.S. Dist. LEXIS 67588 (N.D.N.Y, May 26, 2015)

**COUNSEL:** [*1] RODNEY E. BRANTON, 14-A-4032, Plaintiff, Pro se, Coxsackie, NY.

**JUDGES:** Thérèse Wiley Dancks, United States Magistrate Judge.

**OPINION BY:** Thérèse Wiley Dancks

**OPINION**

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**ORDER and REPORT-RECOMMENDATION**

The Clerk has sent this pro se complaint together with an application to proceed *in forma pauperis* and a motion to set aside judgment to the Court for review. (Dkt. Nos. 1, 4, and 10.) For the reasons discussed below, I grant Plaintiff's *in forma pauperis* application (Dkt. No. 4), recommend that the action be dismissed without leave to amend, and recommend that the motion to set aside the judgment (Dkt. No. 10) be denied as moot.

**I. FACTUAL BACKGROUND**

Defendant Jonathan D. Nichols[1] a judge of the Columbia County Court, presided over a felony indictment charging Plaintiff Rodney E. Branton with two counts of criminal sale of a controlled substance. *Nichols v. Branton*, 45 Misc. 3d 981, 995 N.Y.S.2d 450, 452 (N.Y. Sup. Ct. 2014). In open court, Plaintiff told Defendant, "Your Honor, just to let you know, I will be liening, putting a lien on it" and later reiterated that he had a "lien against" Defendant. *Id.*

  1  This Defendant is listed in the caption as Jonathan D. Nicholas.

Plaintiff then filed a UCC Financing Statement identifying himself as a secured party [*2] and Defendant Nichols as a debtor. *Nichols*, 995 N.Y.S.2d at 452. In the Financing Statement, Plaintiff alleged that he was entitled to all of Defendant Nichols' property "claimed at a sum certain of 28 million U.S. dollars." *Id.*

Defendant Nichols commenced a special proceeding to expunge the financing statement. *Nichols*, 995 N.Y.S.2d at 452. He was represented by Defendant James B. McGowan of the Attorney General's office. *Id.* On September 24, 2014, Defendant Richard M. Platkin, a judge of the Columbia County Supreme Court, granted Defendant Nichols' petition and imposed sanctions on Plaintiff. *Id.* at 452, 456.

Plaintiff was convicted of the felony charges against him and received into the New York Department of Corrections and Community Supervision ("DOCCS") on September 16, 2014. *Inmate Information*, N.Y. DEP'T OF CORR. & CMTY. SUPERVISION, http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ1/WINQ000 (last visited Apr. 15, 2015).

On January 5, 2015, Plaintiff filed this federal action. (Dkt. No. 1.) The named Defendants--in addition to Defendants Nichols, McGowan, and Platkin--are Columbia County, Assistant D.A. James A. Carlucci, Court Assistant Susan Kusminsky, Acting Judge Richard A. McNally, Jr., Police Officer Jason C. Finn, the New York State Police, Investigator Abdul Weed, Trooper Shannon J. Sullivan, DOCCS, [*3] Acting DOCCS Commissioner Anthony J. Annucci, and the New York Attorney General. (Dkt. No. 1 at 1.)

The gravamen of Plaintiff's complaint is that he holds a secured interest in Defendants' property. Specifically, Plaintiff states that he:

> has perfected a security interest in all of the Debtors Property. Plaintiff has a security interest in the indictment/SC #13-059 and all bonds created from the indictment/SCI 13-057. Once the Plaintiff accepted the Debtor property he became exempt from arrest and the acceptance of the indictment moved the controversy from the court.

(Dkt. No. 1-1 at 6.)

Plaintiff also explains that:

> **The Vessel in Commerce** known as RODNEY EMANUEL BRANTON© is a trust created by the Government for the sole benefit of the Secured Party; Rodney Emanuel Branton® is a beneficiary directed trust, for which Rodney Emanuel Branton® is the sole beneficiary. RODNEY EMANUEL BRANTON© [w]as created using the same letters as are used to spell the name of the Secured Part i.e., Rodney Emanuel Branton®, the only difference between the spelling of the two being that the name of the Vessel in Commerce is written in all capital letters and the name of the Secured Party is [w]ritten in upper and lower case [*4] letters.

(Dkt. No. 1-2 at 6, emphases in original.)

Plaintiff's complaint, motion to proceed *in forma pauperis*, and motion to set aside the judgment of Columbia County Judge McNally are now pending before the Court. (Dkt. Nos. 1, 4, and 10.)

## II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

Plaintiff has applied to proceed *in forma pauperis*. (Dkt. No. 4.) A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1) (2006). After reviewing Plaintiff's *in forma pauperis* application (Dkt. No. 4), I find that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed *in forma pauperis* is granted.[2]

> 2  Plaintiff should note that although the application to proceed *in forma pauperis* has been granted, Plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

## III. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

28 U.S.C. § 1915(e) (2006) directs that when a person proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; [*5] or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not shown--that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). However, "the tenet [*6] that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

When screening a complaint, the court has the duty to show liberality towards pro se litigants. *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## IV. ANALYSIS

Plaintiff's complaint is a classic example of "redemptionist" or "sovereign citizen" theory. As the Third Circuit has described it, this theory espouses:

> that a person has a split personality: a real person and a fictional person called the "strawman." The "strawman" purportedly came into being when the United States went off the gold standard . . . and, instead, pledged the strawman of its citizens as collateral for the country's national debt. Redemptionists claim that government has power only over the strawman and not over the live person, who remains free. Individuals can free themselves by filing UCC financing statements, thereby acquiring [*7] an interest in their strawman. Thereafter, the real person can demand that government officials pay enormous sums of money to use the strawman's name or, in the case of prisoners, to keep him in custody.

*Monroe v. Beard*, 536 F.3d 198, 203 n.4 (3d Cir. 2008). Redemptionists claim that when "[a] person's name is spelled . . . with initial capital letters and small letters, [it] represents the real person . . . . Whenever a person's name is written in total capitals, however, . . . only the strawman is referenced, and the flesh and blood person is not involved." *McLaughlin v. CitiMortgage, Inc.*, 726 F. Supp. 2d 201, 210 (D. Conn. 2010) (citations and punctuation omitted). "Theories presented by redemptionist and sovereign citizen adherents have not only been rejected by the courts, but also recognized as frivolous and a waste of court resources." *Muhammad v. Smith*, No. 3:13-CV-760 (MAD/DEP), 2014 U.S. Dist. LEXIS 99990, at *6, 2014 WL 3670609, at *2 (N.D.N.Y. July 23, 2014) (collecting cases).[3] Therefore, I recommend that the Court dismiss Plaintiff's complaint.

3   The Court will provide Plaintiff with a copy of this unpublished decision in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Where a pro se complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that [*8] a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Id.* Here, the problems with Plaintiff's complaint are substantive and better pleading will not cure them. In addition to the claims being patently frivolous, many of the named Defendants are immune from suit. Therefore, I recommend that the Court dismiss the complaint without leave to amend. Because I recommend dismissal without leave to amend, I further recommend that the Court deny the motion to set aside the judgment (Dkt. No. 10) as moot.

**WHEREFORE**, it is hereby

**ORDERED** that the application to proceed *in forma pauperis* (Dkt. No. 4) is **GRANTED**; and it is further

**RECOMMENDED** that the complaint (Dkt. No. 1) be dismissed without leave to amend; and it is further

**RECOMMENDED** that the motion to set aside judgment (Dkt. No. 10) be **DENIED AS MOOT**; and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation on Plaintiff; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of *Muhammad v. Smith*, No. 3:13-CV-760 (MAD/DEP), 2014 U.S. Dist. LEXIS 99990, 2014 WL 3670609 (N.D.N.Y. July 23, 2014) [*9]

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated: April 17, 2015

Syracuse, New York

/s/ Thérèse Wiley Dancks                               United States Magistrate Judge

Thérèse Wiley Dancks



**THE PEOPLE OF THE STATE OF NEW YORK, v. ZACHARIAH W G LATNIE, Defendant-Petitioner.**

**Civil Action No. 1:14-CV-1581 (DNH/DEP)**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF NEW YORK**

**2015 U.S. Dist. LEXIS 14905**

**January 13, 2015, Decided
January 13, 2015, Filed**

**SUBSEQUENT HISTORY:** Adopted by, Motion denied by New York v. Latnie, 2015 U.S. Dist. LEXIS 14324 (N.D.N.Y, Feb. 5, 2015)

**COUNSEL:** [*1] ZACHARIAH W G LATNIE, DEFENDANT-PETITIONER, Pro se, Schenectady, NY.

FOR THE PEOPLE: [NONE].

**JUDGES:** David E. Peebles, United States Magistrate Judge.

**OPINION BY:** David E. Peebles

**OPINION**

REPORT, RECOMMENDATION, AND ORDER

*Pro se* petitioner Zachariah W G Latnie has filed with this court a notice of removal, accompanied by a request for leave to proceed *in forma pauperis* ("IFP"), both of which have been forwarded to me for review. For the following reasons, petitioner's IFP application is denied, and I recommend that his removal notice be dismissed.

I. BACKGROUND

Petitioner's notice of removal consists of two documents, both of which are difficult to decipher and contain nonsensical jargon typical of submissions by so-called "sovereign citizens."[1] *See generally* Dkt. Nos. 1, 1-1. Although it appears that petitioner seeks to remove a criminal action brought against him by the People of the

State of New York in the Town of Colonie Justice Court, designated as Case No. 14080917, he has not attached any state court records to his notice, nor has he provided any further information regarding that criminal prosecution. *Id.* Petitioner sets forth thirty-eight grounds for removal, none of which identify the underlying state court [*2] charges. Dkt. No. 1 at 3-4. By way of example, some of the grounds cited by petitioner include (1) "The UNITED STATES is operating in a chapter 11 reorganization bankruptcy," (2) "Prosecuting attorney DAVID SOARES is a US vessel operating in commerce," and (3) "Presiding Judge NORMAN MASSRY has acted without impartiality *ab initio* in the matter by participating in the franchise he officiates over." *Id.* at 3. Liberally construed, petitioner's documents seek removal of the undisclosed criminal action on the grounds that it involves (1) maritime and/or admiralty subject matter; (2) he has been, or is being, deprived of his Fifth of Sixth Amendment rights in state court; and (3) the judge presiding over the criminal matter has not recused himself. *See generally* Dkt. No. 1.

1 According to the Second Circuit, "[t]he sovereign citizens are a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior. The FBI has labeled the sovereign citizens a domestic terrorist group." *U.S. v. Ulloa*, 511 F. App'x 105, 107 n.1 (2d Cir. 2013). Although petitioner in this matter does not specifically identify himself as part of the sovereign citizen movement, the contents of his affidavit, [*3] submitted in conjunc-

tion with his notice of removal, reflect the principles to which the members of the group adhere. For example, petitioner, who identifies himself as "Secured Party/Authorized Representative" in the "Affidavit of Specific Negative Averment," states as follows:

> Until and unless Secured Party is presented with incontrovertible proof otherwise, Secured Party asserts for and on the record that the fictitious business name Tradesname-Trademark, i.e., ZACHARIAH WILLIAM GREGORY LATNIE and every derivative and orthographic variation of ZACHARIAH WILLIAM GREGORY LATNIE:

> a. Is bankrupt;
> b. May neither sue nor be sued;
> c. Is neither a party capable of appearing in court nor a party bound by any contractual relationship with any Unidentified Entity.

Dkt. No. 1-1 at 5.

## II. DISCUSSION

### A. Application for Leave to Proceed *In Forma Pauperis*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed IFP if it determines that he is unable to pay the required filing fee. 28 U.S.C. § 1915(a)(1).[2] In support of an IFP application, section 1915 requires that the plaintiff submit an affidavit [*4] that reflects all of the assets possessed by him. *Id.*

2 The language of that section is ambiguous, in that it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person

who submits an affidavit that includes a statement of all assets such prisoner possesses"). Courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *see also Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

In this case, petitioner's IFP application is defective. Dkt. No. 2. It provides the court with no information regarding his assets, and recites only what the court perceives to be an inapplicable legal standard. *Id.* Without any meaningful information regarding petitioner's assets, the court cannot determine if he is qualified for IFP status. For this reason, petitioner's IFP application is denied.

### B. Sufficiency of Petitioner's Notice of Removal

Even assuming petitioner can satisfy the requirements for IFP status or pays the requisite filing fee, his notice of removal is subject to dismissal. Only under limited circumstances may a state court criminal prosecution may be removed to [*5] federal court. 28 U.S.C. §§ 1442, 1442a, 1443. Section 1442 applies to criminal prosecutions that are commenced in state court against or directed to certain federal officers or agencies or military personnel. 28 U.S.C. §§ 1442, 1442a. Section 1443 permits removal of criminal prosecutions implicating a prescribed, narrow range of civil rights. 28 U.S.C. § 1443. *N.Y. v. El*, No. 12-CV-4091, 2012 U.S. Dist. LEXIS 126081, 2012 WL 3861227, at *1 (E.D.N.Y. Sept. 4, 2012).

A state-court defendant seeking to remove a criminal prosecution pending against him to federal court is bound by the procedures set forth in 28 U.S.C. § 1455. Under that provision, the notice of removal must be filed in federal court no later than thirty days after the defendant is arraigned in state court "or at any time before trial, whichever is earlier," and must include all the grounds for removal. 28 U.S.C. § 1455(b)(1), (b)(2). The petition must "contain[] a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant." 28 U.S.C. § 1455(a). The district court must "make an order for summary remand" if it appears from the face of the notice that removal is not permitted. 28 U.S.C. § 1455(b)(4).

In this case, petitioner's notice of removal is defective for two reasons. First, the petitioner has not complied with any of the procedural requirements for removal under section 1455. The petitioner's notice does not include any [*6] state court records as required by section 1455(a), and, consequently, the court is not able to

determine whether the notice is timely under section 1455(b). *See generally* Dkt. No. 1.

Second, even liberally construed, the notice of removal does not cite any of the authorized, substantive grounds for removal of a criminal prosecution as provided for in 28 U.S.C. §§ 1442, 1442a, or 1443. With respect to section 1442, there is nothing in the petition that suggests the underlying criminal prosecution was "commenced in a State court . . . against or directed to . . . [t]he United States or any agency thereof or any officer of the United States or of any agency thereof[.]" 28 U.S.C. § 1442. Similarly, petitioner does not allege that the state criminal prosecution was commenced "against a member of the armed forces[.]" 28 U.S.C. § 1442a.

Turning to section 1443, that provision permits the removal of a criminal prosecution commenced in state court "[a]gainst any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof." 28 U.S.C. § 1443(1); *N.Y. v. Best*, No. 14-CV-3634, 2014 U.S. Dist. LEXIS 146795, 2014 WL 53305991, at *1 (E.D.N.Y. Oct. 15, 2014). The Supreme Court has established a two-part test for petitioners seeking to remove an action pursuant to section 1443(1). *Johnson v. Miss.*, 421 U.S. 213, 219, 95 S. Ct. 1591, 44 L. Ed. 2d 121 (1975); *Ga. v. Rachel*, 384 U.S. 780, 792, 803, 86 S. Ct. 1783, 16 L. Ed. 2d 925 (1966). "First, it must appear that the [*7] right allegedly denied the removal petitioner arises under a federal law 'providing for specific civil rights stated in terms of racial equality.'" *Johnson*, 421 U.S. at 219 (quoting *Rachel*, 384 U.S. at 792). "Claims that prosecution and conviction will violate rights under constitutional or statutory provisions of general applicability or under statutes not protecting against racial discrimination, will not suffice." *Johnson*, 421 U.S. at 219; *see also Rachel*, 384 U.S. at 792. A petitioner seeking to remove a criminal prosecution under section 1443(1) must also submit a petition that sets forth allegations suggesting that the petitioner "is 'denied or cannot enforce' the specified federal rights 'in the courts of (the) State.'" *Johnson*, 421 U.S. at 219 (quoting 28 U.S.C. § 1443(1)). This requires that "the 'denial be manifest in a formal expression of state law, such as a state legislative or constitutional provision, rather than a denial first made manifest'" *Id.* (internal citations and quotation marks omitted).

In this case, the notice of removal does not reference any civil rights laws providing for racial equality. *See generally* Dkt. No. 1. To the extent the court understands the petitioner's allegations, he only generally alleges that he was, or is being, denied his rights under the Fifth and Sixth Amendments by the prosecuting attorney and/or presiding [*8] judge in state court. *Id.* There is no indication that petitioner cannot raise any of the alleged constitutional violations in state court. *Id.* Accordingly, I find that the notice is substantively defective, as well.

Although section 1455 provides that a court "shall make an order for summary remand" where it is clear that removal is inappropriate, 28 U.S.C. § 1455, the court cannot remand a case that may not exist. Again, because petitioner has not provided the court with any identifying information regarding the underlying state criminal prosecution, the court is unable to return the case to the appropriate jurisdiction. For that reason, I recommend dismissal of the notice.

III. SUMMARY AND RECOMMENDATION

Petitioner has submitted a notice of removal to federal court and an accompanying IFP application. The IFP application will be denied in light of the absence of any information regarding petitioner's assets. In addition, even assuming petitioner can satisfy the IFP requirements or pays the full filing fee, the notice is subject to dismissal on both procedural and substantive grounds.

Based upon the foregoing, it is hereby

ORDERED that plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is DENIED; [*9] and it is further

RECOMMENDED that the defendant-petitioner's notice of petition for removal (Dkt. No. 1) be DISMISSED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

Dated: January 13, 2015

Syracuse, New York

/s/ David E. Peebles

David E. Peebles

U.S. Magistrate Judge



THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, -v- ZACHARIAH W G LATNIE, Defendant-Petitioner.

No. 1:14-CV-1581 (DNH/DEP)

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF NEW YORK

2015 U.S. Dist. LEXIS 14324

February 5, 2015, Decided
February 6, 2015, Filed

**PRIOR HISTORY:** New York v. Latnie, 2015 U.S. Dist. LEXIS 14905 (N.D.N.Y, Jan. 13, 2015)

**COUNSEL:** [*1] ZACHARIAH W G LATNIE, Defendant-Petitioner, Pro se, Schenectady, NY.

**JUDGES:** David N. Hurd, United States District Judge.

**OPINION BY:** David N. Hurd

**OPINION**

**DECISION and ORDER**

Pro se petitioner Zachariah W G Latnie filed a notice of removal for a state court criminal prosecution on December 29, 2014. On January 13, 2015, the Honorable David E. Peebles, United States Magistrate Judge, advised by Report-Recommendation that petitioner's removal notice be dismissed. No objections to the Report-Recommendation were filed.

Based upon a careful review of the entire file and the recommendations of the Magistrate Judge, the Report-Recommendation is accepted in whole. See 28 U.S.C. § 636(b)(1).

Therefore, it is ORDERED that

1. Petitioner's removal notice is DISMISSED; and

2. The Clerk serve a copy of this Decision and Order upon petitioner in accordance with the Local Rules.

IT IS SO ORDERED.

/s/ David N. Hurd

United States District Judge

Dated: February 5, 2015

Utica, New York.

**Decision by Court**. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED

That the Report-Recommendation by Hon. David E. Peebles is accepted in whole and that the Petitioner's removal notice [*2] is DISMISSED.

All of the above pursuant to the order of the Honorable Judge David N. Hurd, dated the 5th day of February, 2015.

DATED: February 6, 2015

**Federal Rules of Appellate Procedure Rule 4. Appeal as of Right**

**(a) Appeal in a Civil Case**.

1. (1) *Time for Filing a Notice of Appeal*.

(A) In a civil case, except as provided in Rules 4(a)(1)(B), 4(a)(4), and 4(c), the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after entry of the judgment or order appealed from.

(B) The notice of appeal may be filed by any party within 60 days after entry of the judgment or order appealed from if one of the parties is:
(i) the United States;

(ii) a United States agency;

(iii) a United States officer or employee sued in an official capacity; or

(iv) a current or former United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf -- including all instances in which the United States represents that person when the judgment or order is entered or files the appeal for that person.

(C) An appeal from an order granting or denying an application for a writ of error *coram nobis* is an appeal in a civil case for purposes of Rule 4(a).

(2) *Filing Before Entry of* [*3] *Judgment.* A notice of appeal filed after the court announces a decision or order--but before the entry of the judgment or order--is treated as filed on the date of and after the entry.

(3) *Multiple Appeals.* If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later.

(4) *Effect of a Motion on a Notice of Appeal.*

(A) If a party timely files in the district court any of the following motions under the Federal Rules of Civil Procedure, the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion:

(i) for judgment under Rule 50(b);

(ii) to amend or make additional factual findings under Rule 52(b), whether or not granting the motion would alter the judgment;

(iii) for attorney's fees under Rule 54 if the district court extends the time to appeal under Rule 58;

(iv) to alter or amend the judgment under Rule 59;

(v) for a new trial under Rule 59; or

(vi) for relief under Rule 60 if the motion is filed no later than 28 days after the judgment is entered.

(B)(i) If a party files a notice of appeal after the court announces or enters [*4] a judgment--but before it disposes of any motion listed in Rule 4(a)(4)(A)--the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered.

(ii) A party intending to challenge an order disposing of any motion listed in Rule 4(a)(4)(A), or a judgment's alteration or amendment upon such a motion, must file a notice of appeal, or an amended notice of appeal--in compliance with Rule 3(c)--within the time prescribed by this Rule measured from the entry of the order disposing of the last such remaining motion.

(5) *Motion for Extension of Time.*

(A) The district court may extend the time to file a notice of appeal if:

(i) a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and

(ii) regardless of whether its motion is filed before or during the 30 days after the time prescribed by this Rule 4(a) expires, that party shows excusable neglect or good cause.

(B) A motion filed before the expiration of the time prescribed in Rule 4(a)(1) or (3) may be ex parte unless the court requires otherwise. If the motion is filed after the expiration of the prescribed time, notice must be given to the other parties in accordance with local rules.

(C) No extension [*5] under this Rule 4(a)(5) may exceed 30 days after the prescribed time or 14 days after the date when the order granting the motion is entered, whichever is later.

(6) *Reopening the Time to File an Appeal.* The district court may reopen the time to file an appeal for a period of 14 days after the date when its order to reopen is entered, but only if all the following conditions are satisfied:

(A) the court finds that the moving party did not receive notice under Federal Rule of Civil Procedure 77 (d) of the entry of the judgment or order sought to be appealed within 21 days after entry;

(B) the motion is filed within 180 days after the judgment or order is entered or within 14 days after the moving party receives notice under Federal Rule of Civil Procedure 77 (d) of the entry, whichever is earlier; and

(C) the court finds that no party would be prejudiced.

(7) *Entry Defined.*

(A) A judgment or order is entered for purposes of this Rule 4(a):

(i) if Federal Rule of Civil Procedure 58 (a) does not require a separate document, when the judgment or order is entered in the civil docket under Federal Rule of Civil Procedure 79 (a); or

(ii) if Federal Rule of Civil Procedure 58 (a) requires a separate document, when the judgment or order is entered in the civil docket under Federal Rule of Civil Procedure 79(a) and when the earlier of these events occurs:

o the judgment or order is set forth on a separate document, or

o 150 days have run from entry [*6] of the judgment or order in the civil docket under Federal Rule of Civil Procedure 79 (a).

(B) A failure to set forth a judgment or order on a separate document when required by Federal Rule of Civil Procedure 58 (a) does not affect the validity of an appeal from that judgment or order.