UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROBERT EDWARD BUCHHOLZ-KAESTNER,

                       Plaintiff,

                                                                                                6:16-CV-0604
v.                                                                                       (GTS/TWD)

JAMES FITZGERALD; D. SCHULTZ; and
HON. F. CHRISTOPHER GIRUZZI,

                       Defendants.
_____

APPEARANCES:                                                 OF COUNSEL:

ROBERT EDWARD BUCHHOLZ-KAESTNER
  Plaintiff, *Pro Se*
128 Louisa Street, 2nd Floor
Utica, NY 13501

CITY OF UTICA CORPORATION COUNSEL           ZACHARY C. OREN, ESQ.
  Counsel for Defendants Fitzgerald and Schultz     Assistant Corporation Counsel
1 Kennedy Plaza, 2nd Floor
Utica, NY 13502

HON. ERIC T. SCHNEIDERMAN                      COLLEEN D. GALLIGAN, ESQ.
Attorney General for the State of New York          Assistant Attorney General
  Counsel for Defendant Giruzzi
The Capitol
Albany, NY 12224

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

       Currently before the Court, in this civil rights action filed *pro se* by Robert Edward Buchholz-Kaestner ("Plaintiff") against the three above-captioned individuals ("Defendants"), are two motions: (1) Defendant Hon. F. Christopher Giruzzi's motion to dismiss Plaintiff's Complaint for (among other things) failure to state a claim upon which relief can be granted

pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 19); and (2) Defendants James Fitzgerald's and D. Schultz's motion to dismiss Plaintiff's Complaint for (among other things) failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 20). For the reasons set forth below, both motions to dismiss Plaintiff's Complaint are granted.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Complaint

Generally, affording it an extremely liberal construction, Plaintiff's Complaint appears to allege as follows. Plaintiff is a "Royal American National" (and not a United States citizen), "wave[s] the Title 4 U.S.C. Sec. 1 ch. 1 American civilian peace flag," and is not subject to the jurisdiction of the courts of Oneida County. (Dkt. No. 1 at 7.)[1] Defendants James Fitzgerald ("Fitzgerald") and D. Schultz ("Schultz"), police officers employed by the Utica Police Department, executed a traffic stop of Plaintiff's vehicle in Utica, New York. (*Id.* at 1, 3, 6-7.) The traffic stop culminated in the issuance of one or more traffic citations that were prosecuted in Utica City Court, apparently before Defendant Hon. F. Christopher Giruzzi ("Judge Giruzzi"). (*Id.* at 5.)

Although Plaintiff's Complaint contains virtually no factual detail, it appears to assert the following claims: (1) a claim that Fitzgerald and Schultz violated 4 U.S.C. § 1 by not "honoring" the "superior flag Title 4 Civilian American flag of peace";[2] (2) a claim that Fitzgerald and

---

[1] Page citations to Plaintiff's Complaint refer to the pagination generated by CM/ECF, the Court's electronic filing system.

[2] According to 4 U.S.C. § 1 "[t]he flag of the United States shall be thirteen horizontal stripes, alternate red and white; and the union of the flag shall be forty-eight stars, white in a blue field."

Schultz falsely arrested him; (3) a claim that Fitzgerald and Schultz failed to advise Plaintiff of his *Miranda* rights and unlawfully searched his property; (4) a claim that Fitzgerald and Schultz arrested him "using selective enforcement," and deprived him of his right to travel; (5) a claim that Fitzgerald and Schultz conspired to violate his civil rights in violation of 18 U.S.C. §§ 241, 242, 247; (6) a claim that Judge Giruzzi violated his constitutional rights and "tr[ie]d to limit [his rights] reserved under [New York Uniform Commercial Code §§] 1-308 and 1-207" by refusing to dismiss the Utica City Court action; and (7) claims that Defendants "knowingly violated [his] Rights, Federal Statutes, and International Treaties," including 42 U.S.C. §§ 1983, 1985, and 1986, and "S.I.A. of 1976 – 94th Congress (International Treaty)."[3] (*Id.* at 3-7.) Plaintiff also "request[s] that Case No. 2016-02027 from City Court of Oneida County be brought to federal jurisdiction." (*Id.* at 5.)

### B. Parties' Briefing on Defendants' Motions

#### 1. Judge Giruzzi's Memorandum of Law

Generally, in support of his motion, Judge Giruzzi advances five arguments: (1) because Judge Giruzzi is a City Court Justice in the New York State Unified Court System, Plaintiff's claim(s) against him in his official capacity are barred by the Eleventh Amendment of the U.S. Constitution; (2) to the extent that Plaintiff can be understood to assert claim(s) against him in his personal capacity, such claim(s) are barred by the doctrine of absolute judicial immunity; (3) because Plaintiff's claims are predicated on a "sovereign citizen" or "redemptionist" theory, he has failed to allege facts plausibly suggesting an entitlement to relief; (4) Plaintiff should not be

---

[3] It appears that Plaintiff may be referring to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.*

granted leave to amend his Complaint because his claims are frivolous, and better pleading will not cure them; and (5) Plaintiff has not demonstrated entitlement to removal of the Utica City Court case to this Court under 28 U.S.C. § 1443 because (a) he has not alleged facts plausibly suggesting that Judge Giruzzi violated any civil right or federal statute prohibiting discrimination or unequal treatment based upon race (or, for that matter, any issue in the case related to race), and (b) he has not complied with the procedural requirements for removal under 28 U.S.C. § 1455 (i.e., by timely filing a notice of removal containing all the grounds for removal, together with copies of all process, pleadings, and orders from the case). (Dkt. No. 19, Attach. 1, at 3-11 [Giruzzi's Memo. of Law].)

### 2. Fitzgerald's and Schultz's Memorandum of Law

Generally, in support of their motion, Fitzgerald and Schultz advance nine arguments: (1) because Plaintiff's claims are predicated on a "sovereign citizen" theory (which courts consistently reject as frivolous), he has failed to allege facts plausibly suggesting an entitlement to relief; (2) if the Court recognizes Plaintiff's sovereignty, his claim(s) pursuant to 42 U.S.C. § 1983 must be dismissed because it is "legally impossible" that Defendants acted under color of state law and deprived him (a non-citizen) of any rights; (3) to the extent that Plaintiff has successfully removed the Utica City Court case to this Court by filing his Complaint, the Court lacks subject-matter jurisdiction over his Complaint because Plaintiff has not established that removal is appropriate under 28 U.S.C. § 1443 (i.e., that his rights will be violated by the very act of facing prosecution related to his traffic citations in state court, or that he has been subjected to any form of racial discrimination); (4) even if the Utica City Court case has been properly removed to this Court, Fitzgerald and Schultz are not proper parties to the case; (5)

Plaintiff's claim that he was not read his *Miranda* warnings is not legally cognizable under § 1983; (6) Plaintiff's selective enforcement claim must be dismissed because he has failed to allege facts plausibly suggesting (a) the existence of any comparators or (b) that he was selectively treated based upon his membership in a suspect class, such as race or religion; (7) Plaintiff's false arrest claim must be dismissed because he has failed to allege facts plausibly suggesting that Fitzgerald and Schultz lacked probable cause to stop him (given that Plaintiff was driving with a suspended license); (8) they are entitled to qualified immunity because (a) Plaintiff's (routinely rejected) sovereign citizen legal theory is not clearly established, and (b) they acted in an objectively reasonable manner, given that they had arguable probable cause to arrest him; and (9) to the extent that Plaintiff may be understood to assert any claims under New York State law, these claims should be dismissed because he has not complied (or even pleaded compliance) with the notice-of-claim requirements set forth in New York General Municipal Law § 50-e. (Dkt. No. 20, Attach. 15, at 5-20 [Officers' Memo. of Law].)

### 3. Plaintiff's Memorandum of Law in Opposition to Both Motions

Generally, in opposition to Defendants' motions, Plaintiff appears to advance six arguments: (1) the traffic citations that he was issued (apparently for not having a valid driver's license) are "null, void, fraud, and unconstitutional" because "the right to travel is protected constitutionally" and the U.S. Supreme Court has held that no license is required to drive an automobile; (2) in the Utica City Court case, Judge Giruzzi committed an "Anti-American . . . federal offence" by advising Plaintiff that he could not bring his flag into the courtroom; (3) Utica City Court lacks jurisdiction over him because he is a "foreign state" and "independent sovereign"; (4) "[y]our government" (presumably referring to the government of which the Court

is a part) lacks jurisdiction over him because he is a "Royal American National . . . expatriate" who enjoys "foreign immunity"; (5) Fitzgerald and Schultz violated the U.S. Constitution, international treaties, 18 U.S.C. § 241, and 42 U.S.C. §§ 1983, 1985-86; and (6) he has reserved his rights pursuant to New York Uniform Commercial Code § 1-308. (Dkt. No. 22 [Plf.'s Opp'n Memo. of Law].)[4]

### 4. Judge Giruzzi's Reply

Generally, in his reply, Judge Giruzzi reiterates the arguments set forth in his memorandum of law and, moreover, argues that the cases cited by Plaintiff in support of his arguments (for example, that he is not required to obtain a license or pay a fee to drive his vehicle) do not support the points of law for which he cites them.[5] (Dkt. No. 26 [Giruzzi's Atty. Affirm. in Reply].)

### 5. Plaintiff's Surreply

Generally, in what the Court construes to be an improper surreply, Plaintiff reiterates the arguments set forth in his opposition memorandum of law and the allegations contained in his

---

[4] Plaintiff has also filed (1) a document consisting largely of quotations attributed to James Madison, George Washington, Thomas Jefferson, John F. Kennedy, and the Federalist Papers (Dkt. No. 22, Attach. 2), and (2) documents that he filed with Utica City Court in May 2016 and June 2016 (Dkt. No. 22, Attach. 1). The documents that Plaintiff filed in Utica City Court include the following: (a) a "judicial notice" that he is "a Royal American National"; (b) a legal brief, in which he appears to have argued that his traffic citations must be dismissed because (i) he is "Royalty" and "a natural individual" who cannot be bound by statute and (ii) the right to trial is "protected constitutionally"; (c) a "motion to dismiss with brief attached," in which he argued that he enjoys "immunity under the Sovereign Immunity Act of 1976 [and] Crown Immunity"; and (d) a demand for a jury trial. (Dkt. No. 22, Attach. 1.)

[5] Defense counsel is respectfully reminded that, pursuant to the Court's Local Rules of Practice, legal arguments must be set forth in a memorandum of law (and not in an affidavit or affirmation). N.D.N.Y. L.R. 7.1(a)(1), (2).

Complaint (i.e., that he is a "Royal American" and an independent sovereign, and cannot be "sued").[6] (Dkt. No. 28.)

### 6. Plaintiff's Miscellaneous Filings

Plaintiff has filed numerous other documents in this case (both before and after Defendants filed their respective motions to dismiss). These filings include the following: (1) an "AFFIDAVIT OF TRUTH," in which Plaintiff asserts, *inter alia*, that (a) he is a "natural, freeborn Sovereign" who is not "subject to any entity anywhere," (b) he is "not a 'person' [as] defined in statutes of the United States [or] statutes of the several states," and (c) he is not required to possess a driver's license in order to "travel in [his] car" (Dkt. No. 14); (2) an "AFFIDAVIT FOR NON CORPORATE STATUS," in which Plaintiff asserts, *inter alia*, that he is "a living breathing Royal" and not a "corporation created under the laws of the United States or any state" (Dkt. No. 14, Attach. 2); (3) a letter, filed on July 25, 2016, in which Plaintiff states that he "a legal sovereign individual under the provisions of the Tenth Amendment of the [U.S.] Constitution" (Dkt. No. 15); (4) a letter, filed August 22, 2016, in which Plaintiff states that "undercover[] U.P.D. & state police" officers were "following [him] and [his] family" to "spy[]" on them (Dkt. No. 18); (5) a letter-motion, filed on September 19, 2016, in which Plaintiff argues that (a) he is "not subject to[] the contract obligations in equity known as the Motor Vehicle Codes of the respective states," (b) "speed limits and other traffic control devices . . . are simply an unlawful tax or impost on travel," and (c) he reserved his rights by filing a "Uniform Commercial Code-1" form with the New York Secretary of State, as well as "request[ing that]

---

[6] Plaintiff is respectfully reminded that, pursuant to the Court's Local Rules of Practice, a surreply is not permitted. N.D.N.Y. L.R. 7.1(b)(1).

$711,000 out of the $950,000 in U.S. Treasury gold be paid to the national debt, in exchange for the American civilians freedom & property that has be[en] held accountable for the national debt by the tyrannat [*sic*] government . . ." (Dkt. No. 24);[7] (6) a letter, filed on September 22, 2016, in which Plaintiff (a) reiterates many of the factual allegations and legal arguments set forth in his other filings, (b) states that Defendants are "racist, Anti-American, and . . . have no say or power to over rule . . . my royalty," and that they must "be charged and . . . imprisoned for life," and (c) speculates, in an incomprehensible non sequitur, about the relationship between the United States government and international terrorism (Dkt. No. 25); (7) a memorandum of law (captioned "U.S. Supreme Court and Other High Courts Citations proving that No License is Necessary for Normal Use of Automobile on Common Ways"), filed on October 3, 2016 (Dkt. No. 29);[8] (8) a letter-motion, filed on October 12, 2016, in which Plaintiff requests that the Court dismiss the underlying Utica City Court case for the reasons set forth in previous filings in this case (Dkt. No. 30); (9) a letter, filed on October 19, 2016, in which Plaintiff (a) states that, at a recent appearance in Utica City Court, Judge Giruzzi advised him to retain an attorney for his upcoming trial and that he could not proceed *pro se* because he "live[s] in a 'fantasy'" and appears "emotionally and/or mentally unstable," and (b) reiterates his arguments that his traffic citations must be dismissed (Dkt. No. 31); (10) documents filed on October 24, 2016 and

---

[7] Attached to Plaintiff's letter-brief was another document, captioned "The Commerce Game Exposed," which purports to explain that an executive order issued on May 1, 1933 by President Frank Delano Roosevelt, directing that gold coin, bullion, and certificates be returned to the U.S. Federal Reserve, was an act of treason. (Dkt. No. 24, Attach. 1.)

[8] In this memorandum of law, "[t]o clear confusion," Plaintiff argues that he is entitled to "$950,000.00 per Defendant" (apparently referring to criminal fines that they must pay him based on their conduct), and demands that this money be paid in "United States Treasury Gold or [a] Constitutional form of money." (Dkt. No. 29 at 11.)

October 26, 2016, in which Plaintiff (again) asserts that Defendants violated his rights under numerous statutes, constitutional provisions, purported treaties, and the Uniform Commercial Code (Dkt. Nos. 35, 36);[9] and (11) documents captioned "Judicial Notice of International Law of Nations" and "Vereified [*sic*] Judical [*sic*] Notice Regauged [*sic*] Foreign Flag" (Dkt. No. 37, Attachs. 1-2 [capitalization omitted]).

Because this Decision and Order is intended primarily for the review of the parties, the Court will not further recite the contents of these filings, with which the parties are familiar. The Court notes only that (1) many of Plaintiff's filings lack any connection to any cognizable request for relief pending before the Court, (2) in any event, it has carefully reviewed these filings out of the utmost solicitude to Plaintiff in light of his status as a *pro se* civil rights litigant.

## II. RELEVANT LEGAL STANDARD GOVERNING A MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a

---

[9] Although Plaintiff's filings contain almost no factual allegations or explanations, Plaintiff appears to assert that Fitzgerald and Schultz verbally threatened him during the traffic stop. (Dkt. No. 36 at 4.)

pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atl. Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Id*. at 1950 (internal quotation marks and citations omitted). However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted

unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed. R. Civ. P. 8, 10 and 12. Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed. R. Civ. P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[10] Stated more simply, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended." *Jackson*, 549 F. Supp. 2d at 214 n. 28 (citations omitted).

---

[10] *See Vega v. Artus*, 610 F. Supp. 2d 185, 196, n.10 (N.D.N.Y. 2009) (Suddaby, J.) (citing Supreme Court and Second Circuit cases); *Rusyniak*, 629 F. Supp. 2d at 214 & n. 34 (citing Second Circuit cases).

## III. ANALYSIS

### A. Whether Plaintiff's Complaint Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative for each of the reasons set forth in Defendants' memoranda of law. (Dkt. No. 19, Attach. 1 [Giruzzi's Memo. of Law]; Dkt. No. 20, Attach. 15 [Officers' Memo. of Law]; Dkt. No. 26 [Giruzzi's Atty. Affirm. in Reply].) To those reasons, the Court adds four points.

First, the Court does not construe Plaintiff's Complaint as constituting a notice purporting to remove to this Court the prosecution of his traffic tickets (or any other offense that may be pending) from Utica City Court. Although in his Complaint Plaintiff "request[s] that Case No. 2016-02027 from City Court of Oneida County[] be brought to federal jurisdiction," he has not filed a notice of removal and otherwise appears to assert federal constitutional claims predicated upon Defendants' alleged lack of respect for his purported sovereignty. (Dkt. No. 1 at 5.) However, even if Plaintiff's Complaint were construed as constituting a notice of removal, the Court accepts Defendants' arguments that he has failed to (1) allege facts plausibly suggesting that removal is appropriate under 28 U.S.C. § 1443 (or any other provision), and (2) comply with any of the procedural requirements for removal set forth in 28 U.S.C. § 1455. (Dkt. No. 19, Attach. 1, at 9-11; Dkt. No. 20, Attach. 15, at 7-10.)

Second, setting aside the issue of removal, Plaintiff's Complaint, opposition memorandum of law, and numerous other filings make abundantly clear that he is proceeding in the present case on the basis of his purported status as a sovereign citizen. "Theories presented by redemptionist and sovereign citizen adherents have not only been rejected by the courts, but also recognized as frivolous and a waste of court resources." *Muhammad v. Smith*, 13-CV-0760,

2014 WL 3670609, at *2 (N.D.N.Y. July 23, 2014) (D'Agostino, J.); *accord*, *Charlotte v. Hansen*, 433 F. App'x 660, 661 (10th Cir. 2011) (summary order) (noting that "an individual's belief that her status as a 'sovereign citizen' puts her beyond the jurisdiction of the courts has no conceivable validity in American law") (internal quotation marks omitted); *see also U.S. v. Ulloa*, 511 F. App'x 105, 106 n.1 (2d Cir. 2013) (summary order) ("The sovereign citizens are a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior. The FBI has labeled the sovereign citizens a domestic terrorist group."); *Monroe v. Beard*, 536 F.3d 198, 203 n.4 (3rd Cir. 2008) ("[T]he 'Redemptionist' theory . . . propounds that a person has a split personality: a real person and a fictional person called the 'strawman.' The 'strawman' purportedly came into being when the United States went off the gold standard . . . and, instead, pledged the strawman of its citizens as collateral for the country's national debt. Redemptionists claim that government has power only over the strawman and not over the live person, who remains free. Individuals can free themselves by filing UCC financing statements, thereby acquiring an interest in their strawman. . . . Adherents of this scheme also advocate that inmates copyright their names to justify filing liens against officials using their names in public records such as indictments or court papers."); *Branton v. Columbia Cty.*, 15-CV-0005, 2015 WL 3397949, at *2-4 (N.D.N.Y. May 26, 2015) (Hurd, J., adopting Report-Recommendation of Dancks, M.J., dismissing plaintiff's complaint, which was "a classic example of [the] 'redemptionist' or 'sovereign citizen' theory," and denying leave to amend); *Green v. Pryce*, 15-CV-3527, 2015 WL 4987893, at *3-4 (E.D.N.Y. Aug. 18, 2015) (dismissing plaintiff's complaint on initial review and denying leave to amend, where the complaint was based "on the 'redemptionist' theory," included claims

"pursuant to federal criminal statutes that do not provide a private right of action," and "failed to set forth any facts to support" his § 1983 claim). Here, Plaintiff's Complaint (1) is comprised of repeated references to his status as a sovereign and the legal assertion that he "reserv[ed his] rights under the U.C.C.," (2) is virtually devoid of factual allegations about the traffic stop at issue (or any other event based in fact),[11] and (3) contains citations to statutes and references to treaties that do not provide a private cause of action. (Dkt. No. 1.) As noted above, Plaintiff's other repetitive and vexatious filings in this case follow the same formula. Accordingly, the Court concludes that Plaintiff's Complaint–predicated as it is on a "sovereign citizen" theory that is routinely held to have no basis in law–does not allege facts plausibly suggesting any entitlement to relief.

Third, the Court accepts (1) Judge Giruzzi's argument that, even crediting the threadbare factual allegations contained in Plaintiff's Complaint, he is shielded by sovereign and absolute immunity as a matter of law (Dkt. No. 19, Attach. 1, at 3-6), and (2) Fitzgerald's and Schultz's argument that, even crediting the threadbare factual allegations contained in Plaintiff's Complaint, they are shielded by qualified immunity as a matter of law with respect to any federal constitutional claim that Plaintiff's Complaint may be construed to assert (Dkt. No. 20, Attach.

---

[11] Although Plaintiff states in one of his other filings that Fitzgerald and Schultz verbally threatened him during the traffic stop, "[v]erbal threats and harassment are not actionable under § 1983, no matter how reprehensible, inappropriate, and unprofessional they may seem, unless the harassment is accompanied by actual injury." *Timm v. Faucher*, 16-CV-0531, 2017 WL 1230846, at *5 (D. Conn. Mar. 31, 2017) (citing *Purcell v. Coughlin*, 790 F.2d 263, 265 [2d Cir. 1986]). Moreover, setting aside his argument that he is immune in light of his sovereignty, the Court notes that Plaintiff does not come close to alleging facts plausibly suggesting that Fitzgerald and Schultz lacked probable cause to arrest him or that a search of his vehicle undertaken by Fitzgerald and/or Schultz violated his constitutional rights.

15, at 14-19).[12]

Fourth, ordinarily, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

---

[12] In his opposition memorandum of law (and, for that matter, his other filings post-dating Defendants' motions), Plaintiff has failed to oppose any of Defendants' arguments, including their arguments with respect to sovereign, absolute, and qualified immunity, as well as his failure to comply with New York State notice-of-claim requirements with respect to any state law claim that he may be understood to have asserted. In this District, when a non-movant fails to oppose a legal argument asserted by a movant, the movant's burden with regard to that argument is lightened, such that, in order to succeed on that argument, the movant need only show that the argument possess facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & nn.2, 3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases). The Court finds that Defendants have, at the very least, met their modest threshold burden for the reasons set forth in their memoranda of law with respect to each of these arguments. The Court notes that Plaintiff received a copy of the Court's *Pro Se* Handbook on May 25, 2016. (Dkt. No. 4.)

In this instance, the Court concludes that the defects in Plaintiff's claims are substantive, rather than formal, such that any amendments would be futile. More specifically, as discussed above (and, again, as his Complaint and numerous other filings reveal), Plaintiff's claims are founded on a legal theory that has been uniformly rejected as not just lacking in merit, but a frivolous waste of court resources. Based upon how Plaintiff has litigated his case to this point (as well as a careful review of each of his filings), the Court cannot conclude that granting leave to amend has any likelihood of being productive.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's letter-motion of September 19, 2016 (Dkt. No. 24) is **DENIED**; and it is further

**ORDERED** that Plaintiff's letter-motion requesting the dismissal of the underlying Utica City Court case (Dkt. No. 30) is **DENIED**; and it is further

**ORDERED** that Defendants Giruzzi's motion to dismiss pursuant to, *inter alia*, Fed. R. Civ. P. 12(b)(6) (Dkt. No. 19), is **GRANTED**; and it is further

**ORDERED** that Defendants Fitzgerald's and Schultz's motion to dismiss pursuant to, *inter alia*, Fed. R. Civ. P. 12(b)(6) (Dkt. No. 20), is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED** in its entirety with prejudice; and it is further

**ORDERED** that the Clerk of the Court shall enter judgment in favor of Defendants and close this case.

Dated: May 30, 2017
       Syracuse, New York

                                        Hon. Glenn T. Suddaby
                                        Chief U.S. District Judge